[No. 41185-7-II.   Division Two.   May 1, 2012.]

THE STATE OF WASHINGTON, *Respondent*, v. JESSICA LYNN YOUNG, *Appellant*.

*Jodi R. Backlund* and *Manek R. Mistry* (of *Backlund & Mistry*), for appellant.

*Deborah S. Kelly, Prosecuting Attorney*, and *Brian P. Wendt, Deputy*, for respondent.

¶1 QUINN-BRINTNALL, J. — Following a stipulated bench trial, the trial court found Jessica Young guilty of possessing methamphetamine. RCW 69.50.4013(1). Young appeals, arguing that the police officers had no probable cause to seize her and that the trial court erred in admitting evidence discovered as a result of her unconstitutional seizure. Because the police officers did not have reasonable suspicion to seize Young, we hold that the seizure was unlawful and that the trial court erred in denying Young's motion to suppress the evidence. Accordingly, we reverse Young's conviction, vacate her sentence, and remand for further proceedings.

## FACTS

¶2 On January 28, 2010, city of Sequim Police Officer Richard Larsen noticed Young inside a Safeway supermarket at approximately 10:45 PM. When Young left the supermarket, Larsen stopped her and asked her name, which she gave voluntarily. Larsen explained that her "behavior was suspicious to [him]" because "most people that come to the store buy something, they don't just see a cop and then take off towards the door."[1] Report of Proceedings (RP) (June 3, 2010) at 50. Young did not have identification, declined to give Larsen her date of birth, and left when Larsen said she was free to leave.

---

[1] Officer Larsen testified that he initially suspected Young shoplifted from the Safeway because when she saw him inside the store, she "immediately stopped with the deer in the headlights look, turned and went straight for the front door." Report of Proceedings (June 3, 2010) at 22.

¶3 Officer Larsen drove his patrol vehicle next to city of Sequim Police Officer Chris Wright's patrol vehicle and told him about his contact with Young. Larsen ran a "local check" for arrest warrants, which came back negative. Wright indicated to Larsen that Young had walked behind a closed Laundromat business across the street from the supermarket.

¶4 Officers Larsen and Wright drove their separate patrol vehicles to the street behind the Laundromat. Wright arrived first, exited his vehicle, and approached Young. Larsen arrived a few minutes later. The officers stood approximately five feet from Young, each at 45-degree angles from her. Young was on her cell phone "saying that she was being harassed" by the police. RP (June 3, 2010) at 21. She told the officers that she was "walking through going over by the [neighboring] trailer park." RP (June 3, 2010) at 72-73. Larsen asked Young for the last four digits of her Social Security number, which she gave in reverse order.

¶5 Officer Larsen testified that he thought Young was lying about her identity because although she was not breaking any laws, "the totality of everything was very awkward, very suspicious," "most people don't walk behind a closed business and stand up against the wall," and "[s]he could have been planning on breaking into the place for all I know." RP (June 3, 2010) at 21, 23. Larsen further testified that Young's lack of identification was suspicious because "[m]ost people carry identification on them." RP (June 3, 2010) at 22. Larsen also testified that Young was "argumentative" and "evasive" but that she opened her bag to show the officers its contents and the officers did not see anything stolen from the Safeway. RP (June 3, 2010) at 21.

¶6 Young walked away once again. The officers repositioned their vehicles so they could observe her while they ran a statewide warrant search with the last four digits of her Social Security number. The officers lost sight of Young just as they learned that the Fife Police Department had an

arrest warrant for Young for a narcotics-related crime. Officer Larsen looked for Young outside of a hotel while Officer Wright went inside a neighboring bar. A bartender informed Wright that a woman matching Young's description had recently walked inside and was in the restroom. Wright radioed Larsen that Young was "most likely" inside the bar's restroom.[2] RP (June 3, 2010) at 12.

¶7 The officers arrested Young and led her out of the bar to the parking lot. Officer Larsen searched Young while she stood next to a patrol vehicle. A third officer arrived to assist and asked Young if there was anything in her purse the police "needed to know about." RP (June 3, 2010) at 17. Young said "she had needles in her bag." RP (June 3, 2010) at 17. The officer then emptied the contents of Young's purse on the hood of Larsen's patrol vehicle.

PROCEDURAL HISTORY

¶8 The State charged Young with unlawful possession of methamphetamine. RCW 69.50.4013(1). Young moved to suppress "evidence obtained as the result of a warrantless seizure," arguing that the officers seized her behind the Laundromat and that the following warrantless search of her purse was unlawful. Clerk's Papers (CP) at 43. Following a CrR 3.6 hearing, the trial court denied Young's motion, finding that the "initial contacts" outside the Safeway and behind the Laundromat were reasonable and that the officers' search of Young's purse was valid as incident to her arrest. CP at 26.

---

[2] The restroom was small and had one window with bars on it. Young was sitting in the only stall while speaking on a cell phone. The officers could see her shins and shoes. Officers Larsen and Wright opened the restroom door and told Young several times that she should exit the restroom because there was a warrant for her arrest. Larsen testified that Young exited the restroom but "pulled away" from the arresting officers. RP (June 3, 2010) at 10. Larsen "then shoved [Young] up against the bar and her hands were placed behind her back." RP (June 3, 2010) at 10. Young testified Larsen ordered her out of the bathroom, threatening to "rip [her] out by [her] effing hair," reached into the stall, grabbed her and "pushed [her] into the bar." RP (June 3, 2010) at 77-78. Larsen later admitted that he may have raised his voice, but denied using "foul language." RP (June 3, 2010) at 95. The officers handcuffed Young and walked her out of the tavern.

¶9 Young waived her right to a jury trial.[3] On July 21, the trial court found Young guilty as charged and adopted the findings of fact and conclusions of law from the order denying Young's motion to suppress. RCW 69.50.4013(1). Young timely appeals.

## DISCUSSION

¶10 Young argues that Officers Larsen and Wright unlawfully seized her when they "cornered" her behind the closed Laundromat in violation of constitutional protections against unreasonable search and seizures. U.S. CONST. amend. IV; WASH. CONST. art. I, § 7. Young argues that the officers had no reasonable suspicion to detain her when they approached and kept her behind the closed business. Thus, Young asserts that the methamphetamine evidence discovered from information gathered during the unlawful seizure must be suppressed. *State v. Allen*, 138 Wn. App. 463, 469, 157 P.3d 893 (2007) (" 'When an unconstitutional search or seizure occurs, all subsequently uncovered evidence becomes fruit of the poisonous tree and must be suppressed.' " (quoting *State v. Ladson*, 138 Wn.2d 343, 359, 979 P.2d 833 (1999))). We agree.

¶11 We review a trial court's denial of a motion to suppress by considering whether substantial evidence supports the challenged findings and whether those findings support the trial court's conclusions of law. *State v. Bartolome*, 139 Wn. App. 518, 521-22, 161 P.3d 471 (2007); *State v. Ross*, 106 Wn. App. 876, 880, 26 P.3d 298 (2001), *review denied*, 145 Wn.2d 1016 (2002). Unchallenged findings are verities on appeal. *State v. Hill*, 123 Wn.2d 641, 644, 870 P.2d 313 (1994). Here, Young assigns error to the trial court's finding that there was no seizure in either contact because Young "was free to leave" and to the trial court's legal conclusion that both initial contacts were reasonable. CP at 24.

---

[3] Young stipulated to the admissibility of police reports and that the controlled substance was methamphetamine.

¶12 Young bears the burden to prove a seizure occurred in violation of her constitutional rights. *State v. Harrington*, 167 Wn.2d 656, 664, 222 P.3d 92 (2009). Seizures, except in very few limited circumstances, must be based on probable cause. *In re Armed Robbery*, 99 Wn.2d 106, 109, 659 P.2d 1092 (1983). "Probable cause for a search warrant or seizure is established by an affidavit or testimony stating facts sufficient for a reasonable person to conclude the defendant probably was involved in criminal activity." *Rozner v. City of Bellevue*, 56 Wn. App. 525, 528, 784 P.2d 537 (1990) (citing *State v. Huft*, 106 Wn.2d 206, 720 P.2d 838 (1986)), *rev'd on other grounds*, 116 Wn.2d 342, 804 P.2d 24 (1991). Probable cause to detain or search must be based on more than mere suspicion. *State v. Neth*, 165 Wn.2d 177, 182, 196 P.3d 658 (2008) (citing *Brinegar v. United States*, 338 U.S. 160, 176, 69 S. Ct. 1302, 93 L. Ed. 1879 (1949)).

¶13 "The most fundamental of the exceptions to the warrant requirement is the detention of a person that an officer has probable cause to believe has committed a crime." *State v. Smith*, 145 Wn. App. 268, 275, 187 P.3d 768 (2008) (citing *State v. King*, 89 Wn. App. 612, 618, 949 P.2d 856 (1998)).

> A second, narrower exception is an investigative *Terry*[4] stop, based upon less evidence than is needed for probable cause to make an arrest, which permits the police to briefly seize an individual for questioning based on specific and articulable objective facts that give rise to a reasonable suspicion that the individual has been or is about to be involved in a crime.

*Smith*, 145 Wn. App. at 275 (citing *King*, 89 Wn. App. at 618); *see State v. Armenta*, 134 Wn.2d 1, 10, 948 P.2d 1280 (1997). "Startled reactions to seeing the police do not amount to reasonable suspicion." *State v. Gatewood*, 163 Wn.2d 534, 540, 182 P.3d 426 (2008) (citing *State v. Henry*, 80 Wn. App. 544, 552, 910 P.2d 1290 (1995)).

---

[4] *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

■ ■ ¶14 " '[A] police officer's conduct in engaging a defendant in conversation in a public place and asking for identification does not, alone, raise the encounter to an investigative detention.' " *Harrington*, 167 Wn.2d at 665 (alteration in original) (internal quotation marks omitted) (quoting *State v. Young*, 135 Wn.2d 498, 511, 957 P.2d 681 (1998)). Article I, section 7 permits such "social contact[s]." *Harrington*, 167 Wn.2d at 665. A person is seized if, when in an objective view of all the circumstances, a reasonable person would not have felt free to leave, decline to answer questions, or terminate the encounter with police. *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S. Ct. 1870, 64 L. Ed. 2d 497 (1980); *Young*, 135 Wn.2d at 510-11; *State v. Thorn*, 129 Wn.2d 347, 352, 917 P.2d 108 (1996), *overruled on other grounds by State v. O'Neill*, 148 Wn.2d 564, 62 P.3d 489 (2003); *State v. Ellwood*, 52 Wn. App. 70, 73, 757 P.2d 547 (1988). There is no seizure when police ask questions of an individual as long as the officers do not convey that compliance with their requests is required. *Florida v. Bostick*, 501 U.S. 429, 434-37, 111 S. Ct. 2382, 115 L. Ed. 2d 389 (1991) (citing *California v. Hodari D.*, 499 U.S. 621, 628, 111 S. Ct. 1547, 113 L. Ed. 2d 690 (1991)). In such a case, the encounter is consensual and no reasonable suspicion is required. *Bostick*, 501 U.S. at 434.

■ ■ ¶15 An encounter may lose its consensual nature and become a seizure for Fourth Amendment or article I, section 7 purposes if " 'the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen.' " *Bostick*, 501 U.S. at 434 (quoting *Terry v. Ohio*, 392 U.S. 1, 19 n.16, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968)). Examples of police showing authority include " 'the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled.' " *Harrington*, 167 Wn.2d at 664 (internal quotation marks omitted) (quoting *Young*, 135 Wn.2d at

512). "If police unconstitutionally seize an individual prior to arrest, the exclusionary rule calls for suppression of evidence obtained via the government's illegality." *Harrington*, 167 Wn.2d at 664.

¶16 Here, the record shows that Young gave her correct name to Officer Larsen when asked in front of the Safeway. Larsen ran a "local check" for warrants that came back clear. Despite the clear warrant check, Larsen radioed for assistance and continued to watch Young as she crossed the street and walked behind a business. Then, for no articulated reason, Larsen and Officer Wright drove in separate patrol vehicles toward Young. They stood approximately five feet from Young, each at 45-degree angles from her while her back was to a wall, and asked for the last four digits of her Social Security number. Young gave the officers the numbers, albeit in reverse order, and even opened her bag to show the officers she had not shoplifted. Yet the officers continued to watch Young as she walked away for a second time, and ran the Social Security number through a statewide warrant check.

¶17 These facts are insufficient to justify a *Terry* stop. There is no evidence in the record before us that the officers had any reason to suspect that Young was or would be engaged in criminal wrongdoing. The State could not articulate a basis for such suspicion during oral argument. Any reasonable person in Young's position, with her back to a wall and police officers on either side of her, would not have felt free to walk away without first answering the officers' questions. *O'Neill*, 148 Wn.2d at 594 (Chambers, J., concurring in part, dissenting in part); *Young*, 135 Wn.2d at 510-11; *Thorn*, 129 Wn.2d at 352.

¶18 Officer Larsen testified that he was suspicious of Young because she was "awkward," had no identification, and walked behind a closed business while talking on a cell phone when he believed "most people" did not walk behind closed businesses and stand against a wall to speak on a cell phone. RP (June 3, 2010) at 21, 23. But Washington law does

not require Young to carry identification on her person at all times. Young may also walk on public roads, behind or in front of closed businesses at night, while talking on a cell phone on her way to see a friend. We find no authority holding that "awkward" behavior, alone, is sufficient to establish reasonable suspicion, let alone probable cause. *Terry*, 392 U.S. at 21; *Rozner*, 56 Wn. App. at 528.

¶19 Larsen's mere suspicion of Young, wholly unsupported by articulable facts, is insufficient to justify seizing her. *Terry*, 392 U.S. at 21; *Gatewood*, 163 Wn.2d at 539. Neither does Larsen's testimony that Young's "evasive" attitude made him "suspicious" satisfy the "specific and articulable objective facts" requirement to support a reasonable suspicion that Young had been or was about to be involved in a crime. *Terry*, 392 U.S. at 21; *Smith*, 145 Wn. App. at 275 (citing *King*, 89 Wn. App. at 618). Accordingly, we hold that substantial evidence does not support the trial court's finding that the contact behind the Laundromat was not a seizure. The trial court erred, therefore, in concluding that the unlawful seizure was reasonable. *Ross*, 106 Wn. App. at 880. Because the police unconstitutionally seized Young behind the Laundromat, the evidence of her Social Security number tainted the discovery of the arrest warrant and the methamphetamine evidence must be suppressed. *Allen*, 138 Wn. App. at 469; *Ladson*, 138 Wn.2d at 359. Accordingly, we reverse Young's conviction, vacate her sentence, and remand for further proceedings.[5] *Harrington*, 167 Wn.2d at 664. If, on remand, the State is unable to produce other untainted evidence to prove beyond a reasonable doubt that Young possessed methamphetamine in violation of RCW 69.50.4013(1), we instruct the trial court

---

[5] Because we reverse Young's conviction and vacate her sentence, we do not address the parties' remaining arguments regarding the officers' warrantless search of Young's purse or her sentence.

to dismiss the charge. *Harrington*, 167 Wn.2d at 664; *Allen*, 138 Wn. App. at 469.

WORSWICK, A.C.J., and VAN DEREN, J., concur.