# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 43275-7-II |
| Respondent, | |
| v. | |
| JOSHUA JAMES REES, | UNPUBLISHED OPINION |
| Appellant. | |

PENOYAR, J.—Joshua Rees appeals from his conviction for unlawful possession of heroin, arguing that the trial court erred by denying his motion to suppress the evidence seized from his vehicle. We affirm.[1]

On September 15, 2011, the execution of a search warrant for Rees's vehicle resulted in the seizure of heroin and drug paraphernalia. The State charged Rees with unlawful possession of heroin. Rees moved to suppress the evidence seized from his vehicle, arguing that the seizure of the vehicle while a search warrant was being obtained was an illegal warrantless seizure. The trial court denied his motion, making the following findings of fact, to which Rees does not assign error:[2]

> 1.1 On September 15, 2011, at approximately 10:47 P.M., in Lewis County, Chehalis Police Officers were dispatched to the Wal-Mart store, located at 1601 NW Louisiana Ave., in response to a report of a lost child.
> 1.2 Officer Ayers arrived and was contacted by Wal-Mart management who informed him that they had located the mother of the lost child inside the store.
> 1.3 Store personnel also stated that the mother was associated with a green Saturn in the parking lot.

---

[1] A commissioner of this court initially considered Rees's appeal as a motion on the merits under RAP 18.14 and then transferred it to a panel of judges.

[2] The findings are therefore verities on appeal. *State v. Stevenson*, 128 Wn. App. 179, 193, 114 P.3d 699 (2005).

1.4     Store personnel stated they had some concern about the vehicle because a male subject was apparently passed out in the front passenger seat, and a small child in the rear area of the vehicle was trying to wake up the man.

1.5     Officer Ayers approached the vehicle, which was running at the time, and observed what appeared to be a male sleeping in the front passenger seat.

1.6     Officer Ayers also observed a small child in the rear of the vehicle who was crying.

1.7     Officer Ayers attempted to rouse the male subject, who was later identified as Joshua James Rees, the defendant, by knocking on and yelling at him through the partially open front, passenger-side window, but was unsuccessful in doing so.

1.8     Officer Ayers was familiar with the defendant through prior contacts, and knew him to use controlled substances.

1.9     The defendant's breathing was shallow.

1.10    Officer Ayers requested aid respond to the scene.

1.11    While waiting for aid to arrive, Officer Ayers and Officer Taylor, who had also responded to the scene, were contacted by a female subject identified as Whitney Cothren.

1.12    Ms. Cothren had a second child with her at the time she contacted the Officers in the parking lot.

1.13    Ms. Cothren appeared lethargic and exhibited slurred speech as she conversed with the Officers.

1.14    Ms. Cothren was able to wake up the defendant by slapping the back of his head and pushing it forward.

1.15    Officer Ayers noted that the defendant appeared to be lethargic and incoherent, and had slurred speech.

1.16    Officer Ayers believed the defendant was under the influence of a narcotic.

1.17    Officer Taylor had the defendant exit the vehicle.

1.18    The defendant was then seated in an aid unit where he was evaluated by medical personnel.

1.19    At this time, Trooper Brunstad, Washington State Patrol, arrived to assist.

1.20    Trooper Brunstad is a Drug Recognition Expert with the Washington State Patrol.

1.21    Officer Ayers asked Trooper Brunstad to contact Ms. Cothren and the defendant to see whether he believed they were under the influence of a controlled substance.

1.22    Trooper Brunstad spoke with Ms. Cothren and made observations of the defendant as he stood nearby.

1.23    Both Ms. Cothren and the defendant appeared lethargic and slow to respond.

1.24    Trooper Brunstad noted that the defendant appeared much more impaired that [sic] Ms. Cothren.

2

1.25    Trooper Brunstad returned a short while later and explained that he believed both the defendant and Ms. Cothren were under the influence of a narcotic.

1.26    Heroin is a narcotic.

1.27    Trooper Brunstad did not believe that either the defendant, nor Ms. Cothren could safely operate a motor vehicle.

1.28    Officer Ayers walked around the Saturn and observe an orange-colored syringe cap on the driver's side floorboard.

1.29    Based on his training and experience, Officer Ayers knew syringes to be a common tool for the intravenous use of drugs.

1.30    Officer Ayers also saw a bloody napkin between where the defendant had been seated inside the vehicle and the front, passenger-side door.

1.31    The defendant was transported to the Centralia Providence Hospital for further evaluation and care.

1.32    Officer Taylor transported Ms. Cothren and her two children to the Centralia Hospital.

1.33    Officer Ayers seized the vehicle while he applied for a search warrant.

1.34    The vehicle was towed to the Chehalis Police Department impound.

1.35    A search warrant for the vehicle was later obtained and executed.

Clerk's Papers (CP) at 35-38.

Based on these findings, the court entered the following conclusions of law:

2.1    Officer Ayers had sufficient probable cause to seize the vehicle and apply for a search warrant.

2.2    At the time Officer Ayers seized the defendant's vehicle, there was sufficient probable cause to warrant a neutral and detached magistrate to believe a controlled substance(s) was in the vehicle, and issue a warrant for the search of the vehicle.

2.3    The seizure of the defendant's vehicle was proper.

2.4    The defendant's motion to suppress is denied.

CP at 38.

After his motion to suppress was denied, Rees agreed to be tried by the court on stipulated facts. The court found him guilty as charged.

Rees renews his argument that the evidence seized from the vehicle was the result of an illegal warrantless seizure of his vehicle while awaiting the issuance of a search warrant.

3

"[W]hen an officer has probable cause to believe that a car contains contraband or evidence of crime, he or she may seize and hold the car for the time reasonably needed to obtain a search warrant and conduct the subsequent search." *State v. Huff*, 64 Wn. App. 641, 653, 826 P.2d 698 (1992). Probable cause exists for a seizure when there are "facts sufficient for a reasonable person to conclude the defendant probably was involved in criminal activity." *State v. Young*, 167 Wn. App. 922, 929, 275 P.3d 1150 (2012) (internal quotations and citations omitted).

Rees contends that the only evidence of drugs inside the vehicle were the syringe cap and bloody napkin, and because neither officer saw an injection site on either Rees or Cothren, those items did not provide Ayers with probable cause to conclude that Rees was probably involved in drug possession. He also contends that a number of medical conditions could have resulted in his lethargy and incoherence.

At the time he seized the vehicle, Ayers had observed that both Rees and Cothren were lethargic and had slurred speech. Brunstad concluded that both were under the influence of controlled substances. Ayers knew that Rees had a history of controlled substance use. Ayers saw a syringe cap and a bloody napkin in the vehicle. Both are consistent with the injection of controlled substances. Ayers had facts sufficient for a reasonable person to conclude that Rees probably was involved in criminal activity. He therefore had probable cause to seize Rees's vehicle for the time needed to obtain and execute a search warrant for the vehicle. The seizure of the evidence from the vehicle did not result from an illegal warrantless seizure.

43275-7-II

We affirm the denial of Rees's motion to suppress.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Penoyar, J.

We concur:

Quinn-Brintnall, J.

Johanson, A.C.J.

5