FILED
COURT OF APPEALS
DIVISION II

2014 APR 22 AM 8: 37

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | | |
|---|---|---|
| STATE OF WASHINGTON, | | No. 44107-1-II |
| Appellant, | | |
| v. | | UNPUBLISHED OPINION |
| PAVEL F. ZALOZH, | | |
| Respondent. | | |

MAXA, J. – The State appeals a trial court order suppressing all evidence from the investigative stop of a vehicle in which Pavel Zalozh was a passenger and dismissing the charges against Zalozh on which the suppressed evidence depended. We hold that the stop was justified because the law enforcement officers reasonably suspected that Zalozh, whom they had probable cause to arrest, was the person they saw hiding in the back seat of the vehicle. Accordingly, we reverse the trial court's order suppressing the evidence seized during the stop and its dismissal of the related charges against Zalozh, and remand for trial.

No. 44107-1-II

FACTS

On the morning of June 11, 2012, a team of officers was attempting to locate Zalozh because he allegedly had violated a no contact order with his girl friend, Oleysa Maksimenko,[1] and because he was a suspect in a recent burglary. The officers had probable cause to arrest Zalozh. The officers suspected that Zalozh might be at Maksimenko's house because (1) he had lived with her in the past, (2) officers previously had located him there in violation of a no contact order, (3) a person who recently had paid Zalozh's bail told officers that Zalozh often was with Maksimenko, and (4) Zalozh's parents stated that he might be staying with Maksimenko. However, the officers did not have any actual evidence that Zalozh was at Maksimenko's house on June 11.

In an attempt to locate Zalozh, one officer conducted surveillance of Maksimenko's house. The officer saw an unidentified adult female open the front door and watch two children walk to the bus stop. Later, the officer observed a silver car back out of the garage. As the car drove by him, he saw that it was driven by the same unidentified female. The officer also noticed an adult person wearing a hooded sweatshirt lying down in the back seat of the car. The officer, who had experience apprehending fugitives in the past, concluded that the person in the back seat was attempting to hide.

The officer relayed his observations to other officers who were several blocks away conducting an unrelated arrest and advised them that the silver car was heading toward their location. As the car matching the first officer's description approached, an officer stepped into the roadway and put his hand out to stop it. The female driver, who officers later identified as

_____

[1] We note that Oleysa Maksimenko's name is spelled three different ways in the record. For this opinion we opt to use the spelling from the trial court's findings of fact and conclusions of law.

2

Maksimenko, complied with the officer's directive. When the car came to a stop, the back-seat passenger sat up. Officers making the stop immediately recognized the person as Zalozh and arrested him. Prior to this stop, none of the officers had identified the driver, the back-seat passenger, or the registered owner of the car.

Maksimenko consented to a search of the car. During the search officers located a backpack and jewelry from burglaries in which Zalozh was a suspect.

The State charged Zalozh with one count first degree burglary, two counts theft of a firearm, and two counts second degree possession of stolen property. Zalozh moved to suppress the evidence seized from the car. The trial court concluded that officers lacked a reasonable articulable suspicion to stop the car. Therefore, the trial court granted Zalozh's motion to suppress the evidence obtained as a result of the unlawful seizure. The trial court then dismissed the charges against Zalozh. The State appeals.

## ANALYSIS

### A. STANDARD OF REVIEW

When reviewing the trial court's grant of a CrR 3.6 suppression motion, we determine whether substantial evidence supports the challenged findings of fact and whether the findings of fact support the conclusions of law. *State v. Garvin*, 166 Wn.2d 242, 249, 207 P.3d 1266 (2009). "Evidence is substantial when it is enough 'to persuade a fair-minded person of the truth of the stated premise.'" *Garvin*, 166 Wn.2d at 249 (quoting *State v. Reid*, 98 Wn. App. 152, 156, 988 P.2d 1038 (1999)). Unchallenged findings of fact are considered verities on appeal. *State v. Lohr*, 164 Wn. App. 414, 418, 263 P.3d 1287 (2011). We review de novo the trial court's conclusions of law pertaining to the suppression of evidence. *Garvin*, 166 Wn.2d at 249.

Findings of fact mislabeled as conclusions of law are treated as findings of fact on review. *State v. Marcum*, 24 Wn. App. 441, 445, 601 P.2d 975 (1979).

B.     JUSTIFICATION FOR INVESTIGATIVE STOP

The trial court concluded that there were no articulable facts that would justify the stop of Maksimenko's car. We disagree. Although the officers did not have actual knowledge that Zalozh and Maksimenko were riding together in the car they stopped, the officers did have a reasonable suspicion based on the totality of the circumstances that both Zalozh and Maksimenko were in the car. Accordingly, the investigatory stop was justified, and the trial court erred in suppressing the evidence discovered following the stop.

1.     Standards for *Terry*[2] Stop

Under the Fourth Amendment to the United States Constitution and article I, section 7 of the Washington State Constitution, a police officer generally cannot seize a person without a warrant supported by probable cause. *Garvin*, 166 Wn.2d at 249; *State v. Acrey*, 148 Wn.2d 738, 745-46, 64 P.3d 594 (2003) (addressing only Fourth Amendment). A warrantless seizure is considered per se unconstitutional unless it falls within an exception to the warrant requirement. *State v. Rankin*, 151 Wn.2d 689, 695, 92 P.3d 202 (2004); *Acrey*, 148 Wn.2d at 746.

One established exception is a brief investigatory detention of a person, commonly called a *Terry* stop. *Acrey*, 148 Wn.2d at 746. A police officer may conduct a warrantless investigative stop based upon less evidence than is needed to establish probable cause to make an arrest. *Acrey*, 148 Wn.2d at 746-47. But the officer must have "a reasonable suspicion, grounded in specific and articulable facts, that the person stopped has been or is about to be involved in a crime." *Acrey*, 148 Wn.2d at 747. "A reasonable, articulable suspicion means that there 'is a

---

[2] *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

4

substantial possibility that criminal conduct has occurred or is about to occur.' " *State v. Snapp*, 174 Wn.2d 177, 197-98, 275 P.3d 289 (2012) (quoting *State v. Kennedy*, 107 Wn.2d 1, 6, 726 P.2d 445 (1986)). The officer's suspicion must relate to a particular crime rather than a generalized suspicion that the person detained is "up to no good." *State v. Bliss*, 153 Wn. App. 197, 204, 222 P.3d 107 (2009). A mere hunch not supported by articulable facts that the person has committed a crime is not enough to justify a stop. *State v. Doughty*, 170 Wn.2d 57, 63, 239 P.3d 573 (2010).

We determine the propriety of an investigative stop – the reasonableness of the officer's suspicion – based on the "totality of the circumstances." *Snapp*, 174 Wn.2d at 198. We must base our evaluation of reasonable suspicion on " 'commonsense judgments and inferences about human behavior.' " *State v. Lee*, 147 Wn. App. 912, 917, 199 P.3d 445 (2008) (quoting *Illinois v. Wardlow*, 528 U.S. 119, 125, 120 S. Ct. 673, 145 L. Ed. 2d 570 (2000)). The focus is on what the officer knew at the time of the stop. *Lee*, 147 Wn. App. at 917. No subsequent events or circumstances can retroactively justify a stop. *State v. Mendez*, 137 Wn.2d 208, 224, 970 P.2d 722 (1999), *abrogated on other grounds by Brendlin v. California*, 551 U.S. 249, 255, 259 n. 5, 127 S. Ct. 2400, 168 L. Ed. 2d 132 (2007). Specifically, the fact that the officer's suspicion turned out to be correct is irrelevant. *See Mendez*, 137 Wn.2d at 224, 226.

Whether a warrantless investigative stop was justified or represented a constitutional violation is a question of law, which we review de novo. *State v. Bailey*, 154 Wn. App. 295, 299, 224 P.3d 852 (2010). The State bears the burden of showing the propriety of an investigative stop. *Acrey*, 148 Wn.2d at 746. If the initial stop was unlawful, the items seized from that stop are inadmissible as fruits of the poisonous tree. *Kennedy*, 107 Wn.2d at 4.

2. Challenged Findings of Fact

The State assigns error to three findings of fact included within the trial court's conclusions of law section. The trial court found that at the time of the stop (1) officers did not know that Zalozh was in the vehicle and there was no evidence that he had been at Maksimenko's house before the stop, (2) the officers did not have any information that Maksimenko was at risk, and (3) the officers did not know that Zalozh was currently violating the no contact order with Maksimenko.

We hold that these findings of fact (which were mislabeled as conclusions of law) were supported by substantial evidence. None of the officers testified that they had *actual* knowledge that Zalozh had been at Maksimenko's house on the day of the stop or that they had identified Zalozh as being a passenger in the car before the stop. One of the officers testified that she was concerned about Maksimenko's safety because of the possible restraining order violation, but the officer's concern was not based on any *actual* knowledge. And the officers had no *actual* knowledge that Zalozh was violating the no contact order because they did not know that he was at Maksimenko's house or in the car with her.

However, these findings of fact do not compel the legal conclusion that the stop was unjustified. In order for an investigatory stop to be lawful, officers must have only a reasonable suspicion that criminal conduct has occurred. *Acrey*, 148 Wn.2d at 747. *Actual* knowledge is not required. *See Snapp*, 174 Wn.2d at 198.[3] As a result, despite the trial court's factual findings, we must evaluate whether the officers' suspicion that Zalozh and Maksimenko were in

---

[3] In *Snapp*, the court held that an officer's observance of a vehicle driving without lights in dark, cold, and icy conditions justified an investigatory stop based on the officer's rational belief that the driver was violating a statute requiring that headlights be on beginning one-half hour after sunset despite not having actual knowledge of the exact time of sunset. 174 Wn.2d at 198-99.

the car together was reasonable under the "totality of the circumstances." *Snapp*, 174 Wn.2d at 198.

### 3. Reasonable Suspicion

If Zalozh and Maksimenko were in the car together, Zalozh was engaged in criminal activity – violation of the no contact order. As a result, whether the officers here had a reasonable suspicion that a crime was being committed depended on whether it was reasonable to suspect that Maksimenko was driving[4] and that Zalozh was the hooded person hiding in the back seat. As noted above, the standard is substantial possibility. *Snapp*, 174 Wn.2d at 197-98.

First, there was strong evidence supporting the officers' suspicion that Maksimenko was driving the vehicle they stopped. An officer was conducting surveillance at Maksimenko's known address, where the team of officers knew she lived with her two children. Based on review of past law enforcement reports, the officers also reasonably concluded that she was the only adult living there. In the morning, an officer observed a woman leave the house briefly to watch two children walk to a bus stop and then go back into the house. The officer later observed the same woman driving a car out of the house's garage. Based on these facts, there was a substantial possibility that the woman driving the car was Maksimenko.

Second, there was evidence supporting the officers' suspicion that Zalozh was at Maksimenko's house. The trial court made unchallenged findings of fact that (1) Zalozh had been located at Maksimenko's house when he previously had violated no contact orders, (2)

---

[4] Even if Maksimenko had not been driving, officers could have stopped the car if they knew Zalozh was in the back seat because they already had probable cause to arrest him for other offenses. *See State v. Quezadas-Gomez*, 165 Wn. App. 593, 602-03, 267 P.3d 1036 (2011) (investigatory stop to inquire of defendant's name and address was legally justified where officer already had probable cause to arrest him). However, whether there was a reasonable suspicion that Maksimenko was driving is relevant to the identity of the passenger. It is more likely that Zalozh would be riding with his girl friend rather than some unidentified female.

Zalozh had lived there in the past, (3) Zalozh's parents told police that Zalozh would be at Maksimenko's house despite the no contact order, and (4) another person told police that Zalozh spent most of his time with Maksimenko. This evidence established that there was a strong possibility that Zalozh was at Maksimenko's house that day.

Third, there was a legitimate reason the officers suspected that Zalozh rather than someone else was in back seat of the car driving away from Maksimenko's house. Instead of simply sitting in the car, the person was lying down in the back seat. And the crucial fact is the officer's testimony that based on his experience, the passenger was *hiding*.[5] If Zalozh was that passenger, he would have a reason to hide because he was violating the no contact order. There would be no known reason that someone other than Zalozh would be hiding in the back of Maksimenko's car. In light of the other circumstances, the fact that the passenger was hiding created a strong possibility that the passenger was Zalozh.

Standing alone, each of these groups of facts would not be enough to conclude that the officers' suspicion that Zalozh and Maksimenko were in the car together was reasonable. The officers had no actual knowledge regarding the identity of the people in the car. The driver could have been someone other than Maksimenko. Zalozh might not have been at Maksimenko's house. The person hiding in the back of the car might have been someone other than Zalozh.

However, we must evaluate the reasonableness of the officers' suspicion based on the totality of the circumstances. *Snapp*, 174 Wn.2d at 198. And certainty – or even probability – is not required to justify an investigatory stop. *See Snapp*, 174 Wn.2d at 198; *State v. Young*, 167 Wn. App. 922, 929, 275 P.3d 1150 (2012). Considering all the evidence, we conclude that there

---

[5] In the context of an investigatory stop, an officer may rely on his experience to identify seemingly innocuous facts as suspicious. *State v. Moreno*, 173 Wn. App. 479, 492-93, 294 P.3d 812, *review denied*, 177 Wn.2d 1021 (2013).

was a substantial possibility that Zalozh was the person hiding in the back of the car and Maksimenko was the person driving. As a result, we hold that the officers had a reasonable suspicion based on articulable facts that a crime was being committed, and that they were justified in making an investigatory stop.

We hold that the trial court erred in concluding that the investigatory stop was unlawful, suppressing the evidence discovered in the search following that stop, and dismissing the charges against Zalozh. Accordingly, we reverse the trial court's ruling suppressing the evidence from the investigative stop, reverse its order dismissing the charges against Zalozh, and remand for trial.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports but will be filed for public record pursuant to RCW 2.06.040, it is so ordered.

_____
MAXA, J.

We concur:

_____
HUNT, J.

_____
BJORGEN, J.

9