# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | NO. 73012-6-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| BRIAN JEFFERY KEMNOW, | ) | |
| | ) | |
| Appellant. | ) | FILED: May 9, 2016 |
| | ) | |

LEACH, J. — Brian Kemnow appeals his conviction for possession of a controlled substance—methamphetamine. He challenges the validity of the search leading to the discovery of drugs on his person. He claims the search violated the Fourth Amendment to the United States Constitution and article I, section 7 of the Washington State Constitution. Because the police seized Kemnow and the State cannot show that an exception to the warrant requirement applies, the results of the search must be suppressed as fruit of the poisonous tree. We reverse and remand for further proceedings consistent with this opinion.

## FACTS

On May 2, 2014, at about 10:32 p.m., Officer James Hannawalt of the Sedro-Woolley Police Department responded to a citizen report that two bicyclists, a red Nissan, and a pickup truck had congregated in the Bethlehem

Lutheran Church parking lot. The caller gave his name to a 911 dispatcher and reported that he believed a drug deal was taking place. He said that he had seen the vehicles in the past but did not see anything exchanged. Officer Hannawalt did not know the informant, only the name the dispatcher provided. He was familiar with other calls about the area and understood it to be a place where drug activity occurred after hours.

The parking lot had two parallel entrances: an eastern entrance and a western entrance, both connecting the parking lot to Wicker Road. Officer Hannawalt entered the eastern entrance. At this time, a pickup truck, driven by Brian Kemnow, was leaving the parking lot on the same driveway. At the same time or just a little bit later, Officer Hannawalt's backup, Officer Heather Sorsdal, entered from the western entrance, checked the parking lot, and then went to Officer Hannawalt's location, also making contact with Kemnow.

Because it appeared to Officer Hannawalt that the pickup truck was trying to go around his patrol car, he shined a spotlight on Kemnow's truck as it approached his vehicle to see the driver. Kemnow stopped the truck before he passed Officer Hannawalt's car in the narrow driveway. Officer Hannawalt parked, walked to Kemnow, told Kemnow that he was investigating a possible drug deal, and described the information that the informant had provided.

Kemnow told the officer that he had seen the bikes and a vehicle but was not involved in a drug deal.

Officer Hannawalt asked Kemnow for identification. Kemnow said that he did not have a driver's license but provided an identification card. Officer Hannawalt may have told Kemnow he could not drive away because he did not have a license. Officer Hannawalt discovered that Kemnow had an outstanding warrant for his arrest. Officer Hannawalt arrested Kemnow, handcuffed him, and searched him. He found two small bags of methamphetamine in Kemnow's pockets.

The State charged Kemnow with possession of a controlled substance. Kemnow moved to suppress the evidence on the basis that the State obtained the evidence as a result of an unlawful seizure. The trial court found that Officer Hannawalt's shining of his spotlight did not constitute a seizure and if it did, an articulable reasonable suspicion supported a brief detention. A jury convicted Kemnow.

## STANDARD OF REVIEW

We review a trial court's denial of a motion to suppress to determine if substantial evidence supports the challenged factual findings and if those findings support the trial court's conclusions of law.[1] "Evidence is substantial

---

[1] State v. Russell, 180 Wn.2d 860, 866, 330 P.3d 151 (2014).

when it is enough 'to persuade a fair-minded person of the truth of the stated premise.'"[2] We review conclusions of law de novo, including the question of whether the facts may be characterized as a seizure.[3]

ANALYSIS

Kemnow contends that Officer Hannawalt unlawfully seized him. The State responds in the alternative: it did not seize Kemnow, and it had a sufficient basis for a brief seizure.

Our state and the federal constitution each prohibit warrantless searches and seizures "unless the State proves that one of the few 'carefully drawn and jealously guarded exceptions' applies."[4] If an encounter does not fall within an exception to the warrant requirement, the exclusionary rule prohibits the introduction of evidence gathered by the State during a warrantless search or seizure.[5] Terry v. Ohio[6] provides a narrow exception to the warrant rule that allows a police officer to conduct a limited search of an individual when that officer has a reasonable, articulable suspicion of criminal behavior. Courts commonly refer to this as a Terry stop.

---

[2] Russell, 180 Wn.2d at 866-67 (internal quotation marks omitted) (quoting State v. Garvin, 166 Wn.2d 242, 249, 207 P.3d 1266 (2009)).

[3] Russell, 180 Wn.2d at 866-67; State v. Gantt, 163 Wn. App. 133, 138, 257 P.3d 682 (2011).

[4] State v. Byrd, 178 Wn.2d 611, 616, 310 P.3d 793 (2013) (quoting State v. Bravo Ortega, 177 Wn.2d 116, 122, 297 P.3d 57 (2013)).

[5] State v. Harrington, 167 Wn.2d 656, 664, 222 P.3d 92 (2009).

[6] 392 U.S. 1, 27, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

Although article I, section 7 provides greater protection to individual privacy rights than the Fourth Amendment, it generally tracks Fourth Amendment analysis in a challenge to the validity of a Terry stop.[7]

To determine if the State seized a person, the court looks to the totality of the circumstances to decide if "a reasonable person in the defendant's position would have believed he or she was free to go or otherwise terminate the encounter, given the actions of the officer."[8] The court must look to an officer's objective actions, such as an officer's use of physical force or display of authority.[9] The person challenging police conduct on the basis of unlawful seizure has the burden to prove that a seizure occurred.[10]

Kemnow asserts that the trial court did not consider the totality of the circumstances when it decided that Officer Hannawalt did not seize Kemnow when he shined his spotlight. Washington jurisprudence has developed a nonexclusive list of police displays of authority that may amount to a seizure, including the presence of several officers, display of an officer's weapon, physical

---

[7] State v. Z.U.E., 183 Wn.2d 610, 617, 352 P.3d 796 (2015).

[8] State v. O'Neill, 148 Wn.2d 564, 577, 62 P.3d 489 (2003); Harrington, 167 Wn.2d at 669-70.

[9] Gantt, 163 Wn. App. at 139 (quoting State v. Beito, 147 Wn. App. 504, 508, 195 P.3d 1023 (2008)); State v. Young, 135 Wn.2d 498, 510-11, 957 P.2d 681 (1998).

[10] Young, 135 Wn.2d at 510.

touching of the detained person, and language requiring an individual to comply with an officer's request.[11]

A police officer may engage in social contact with a person without that contact constituting seizure,[12] but "'social contact' does not suggest an investigative component."[13] Also, social contact may become a seizure when individual police actions that would pass constitutional muster together constitute a display of authority amounting to seizure.[14] In State v. Harrington,[15] Washington's Supreme Court concluded that when an officer approached Harrington on foot and engaged him in conversation, he had mere social contact. But the arrival of a second police officer, requests that Harrington remove his hands from his pockets, and a request to frisk, together formed a "progressive intrusion substantial enough to seize Harrington."[16]

Kemnow contends that undisputed facts, viewed together, similarly show that Officer Hannawalt seized Kemnow. We agree. Officer Hannawalt shined his spotlight on Kemnow's moving vehicle as he partly obstructed its path with his patrol car. As Officer Hannawalt testified, "[I]t was tight, and very slow maneuverability in the area." During this time, Officer Sorsdal entered the

---

[11] Gantt, 163 Wn. App. at 140 (quoting Young, 135 Wn.2d at 512).
[12] Harrington, 167 Wn.2d at 664-65.
[13] Harrington, 167 Wn.2d at 664.
[14] Harrington, 167 Wn.2d at 668-70.
[15] 167 Wn.2d 656, 665-66, 222 P.3d 92 (2009).
[16] Harrington, 167 Wn.2d at 669-70.

parking lot from the only other exit available to Kemnow, and after she searched the parking lot, she joined Officer Hannawalt and Kemnow. Kemnow found himself under a police spotlight with limited ability to pass while in the presence of two officers. Partial obstruction of his vehicle in these circumstances suggests a reasonable person would not believe that he was free to leave.

Next, Officer Hannawalt questioned Kemnow about the alleged drug activity under investigation. This investigative questioning made the contact something more than social. Thus, before Officer Hannawalt ever asked Kemnow for his identification, the police displayed sufficient authority to make a reasonable person in Kemnow's position feel not free to leave.

The State relies on State v. Young[17] and State v. O'Neill[18] to show that an officer's use of a spotlight and request for identification together are not a seizure. In Young, the Supreme Court decided that the shining of a spotlight onto an individual walking at night "reveal[s] only what was already in plain view" and does not amount to a per se intrusion into private affairs without more, such as "some positive command" from the officer.[19] Then, in O'Neill, the Supreme Court, citing its decision in Young, decided that an officer did not unconstitutionally intrude into O'Neill's private affairs when the officer shined a

---

[17] 135 Wn.2d 498, 957 P.2d 681 (1998).
[18] 148 Wn.2d 564, 62 P.3d 489 (2003).
[19] Young, 135 Wn.2d at 513-14.

spotlight on O'Neill's parked vehicle, approached the car using a flashlight to illuminate the interior, asked O'Neill to roll down his window, and asked for his identification.[20] The court looked at the officer's actions in their totality and determined that only when the officer asked O'Neill to step out of the car after learning that O'Neill was driving with a suspended license did the officer seize O'Neill.[21]

But additional facts distinguish this case from Young and O'Neill. Here, unlike in O'Neill, Kemnow's vehicle was moving when Officer Hannawalt shined his spotlight on it. Kemnow's counsel asked Officer Hannawalt on cross-examination during the CrR 3.6 suppression hearing what percentage of time another car stops when he uses his spotlight. Officer Hannawalt responded, "I think just because of natural—I mean, I do the same with bicyclists or pedestrians, because of hours of darkness, they would pause, or stop, so they would wonder, you know, what's going on." As Officer Hannawalt acknowledges, a reasonable person driving in the dark would usually not drive on when an officer shines a spotlight on his vehicle. The State does not claim that Kemnow's statement that he did not have a license gave it reason to detain him, nor would Kemnow's lack of a license justify a seizure that occurred before the officer asked for identification.

---

[20] O'Neill, 148 Wn.2d at 578-81.
[21] O'Neill, 148 Wn.2d at 582.

The State also argues that Kemnow cannot show seizure because Officer Hannawalt did not block in Kemnow's truck. Indeed, Kemnow had space to maneuver around Officer Hannawalt's vehicle and exit the parking lot. But to determine if a seizure occurred, we do not look to see if an officer created a complete obstruction. Rather, we look to see if a reasonable person faced with some obstruction, however great, would feel free to pass. In a Division Two case, State v. Young,[22] two police officers followed Young behind a building because she was acting suspicious. They approached her, stood at 45-degree angles from her while she had her back to the wall, and asked for her social security number.[23] Division Two decided that the officers had unlawfully seized her because "[a]ny reasonable person in Young's position, with her back to a wall and police officers on either side of her, would not have felt free to walk away without first answering the officers' questions."[24] Thus, a barrier created by an officer need not be absolute for officers to demonstrate authority enough to constitute a seizure.

Officer Hannawalt's use of a spotlight on Kemnow's moving vehicle, his partial obstruction of Kemnow's path, his questions to Kemnow about a drug investigation, together with Officer Sorsdal's presence and obstruction of the

---

[22] 167 Wn. App. 922, 931, 275 P.3d 1150 (2012).
[23] Young, 167 Wn. App. at 931.
[24] Young, 167 Wn. App. at 931.

second driveway, amounted to a sufficient display of authority to cause a reasonable person in Kemnow's position not to feel free to leave. Thus, Kemnow's encounter with the police before Officer Hannawalt ever asked Kemnow for identification was a seizure for purposes of article I, section 7 and the Fourth Amendment.

Next, we consider if this seizure was reasonable and thus constitutional.[25] An officer's seizure of a person "is valid only where there are 'specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant' the detention of the person."[26] The State must prove by clear and convincing evidence that a warrantless seizure falls within an exception to the constitutional protection.[27]

When reviewing challenges to a Terry stop under article I, section 7, this court's analysis generally tracks that of the Fourth Amendment, except that our state constitution requires a stronger showing that an officer grounded his suspicion in specific and articulable facts.[28] The State must show facts that connect a particular person to the particular crime that the officer seeks to

---

[25] O'Neill, 148 Wn.2d at 576.
[26] O'Neill, 148 Wn.2d at 576 (quoting Terry, 392 U.S. at 21).
[27] Russell, 180 Wn.2d at 867.
[28] Z.U.E., 183 Wn.2d at 617-18.

investigate rather than facts that merely substantiate an officer's general suspicion about a person.[29]

Here, the State claims that the call it received from the citizen informant provided Officer Hannawalt with facts that justify a <u>Terry</u> stop of Kemnow. Washington courts apply a totality of the circumstances test to determine if the State has adequately shown that an informant's tip bears some "'indicia of reliability.'"[30] The State must show either "(1) circumstances establishing the informant's reliability or (2) some corroborative observation, usually by the officers, that shows either (a) the presence of criminal activity or (b) that the informer's information was obtained in a reliable fashion."[31]

The State offers several facts to support its claims meet this test and thus show Officer Hannawalt's had the required level of reasonable suspicion. It argues that the informant was reliable because the information about drug activity came from a self-identified citizen and the officer believed it came from the citizen's observation. The State also argues that Officer Hannawalt corroborated the description given by the informant when he saw the truck in the parking lot, when Kemnow confirmed he had seen the bicycles and another vehicle in the parking lot, and because the information was consistent with

---

[29] <u>Z.U.E.</u>, 183 Wn.2d at 617-18.
[30] <u>Z.U.E.</u>, 183 Wn.2d at 618-19.
[31] <u>Z.U.E.</u>, 183 Wn.2d at 618-19.

Officer Hannawalt's knowledge that the parking lot was known for its nighttime drug activity.

First, Kemnow challenges the court's factual finding that "[f]rom the information he received, Officer Hannawalt believed that the reporting party had witnessed the transaction." The evidence directly contradicts this finding. Officer Hannawalt's affidavit states that an informant "reported he believed there was a drug deal . . . but did not see anything exchanged." And Officer Hannawalt's testimony shows that he believed the informant had witnessed only "a group of people in a dark parking lot, late at night." Thus, no evidence supports the trial court's challenged finding. Neither the officer's affidavit nor his testimony supports the State's assertion in its brief that Officer Hannawalt believed that the informant had witnessed a drug transaction.

And, as Kemnow notes, the State fails to distinguish this case from the state Supreme Court's decision in State v. Sieler.[32] In Sieler, an informant parent reported a car in a school parking lot at noon that he believed was involved in a drug sale, providing his name and a description of the vehicle.[33] Officers, believing drug sales were not unusual in the parking lot at noon, detained the occupants of a vehicle matching the informant's description, discovering drugs

---

[32] 95 Wn.2d 43, 621 P.2d 1272 (1980).
[33] Sieler, 95 Wn.2d at 44-45.

and obtaining confessions.[34] The court held that the State may not simply rest on an informant's given name to establish the informant's reliability when the informant is otherwise unknown.[35] It also held that an informant's bare conclusion that a drug sale had occurred in a vehicle similar in description to the one police encountered did not warrant police detention of the vehicle's occupants.[36] Rather, the court required that "[s]ome underlying factual justification for the informant's conclusion must be revealed so that an assessment of the probable accuracy of the informant's conclusion can be made."[37] In Sieler, the State did not show that the officers corroborated the informant's tip with its evidence that the officers arrived on the scene, approached the vehicle, and did not see any illegal activity.[38] Nor could it show that officers had corroborated that the informant had reliably obtained his information when the officers merely saw a vehicle conforming to the informant's description of the vehicle.[39]

In the Supreme Court's recent decision, State v. Z.U.E.,[40] it revisited the reasoning in Sieler. It applied a totality of the circumstances test and similarly

---

[34] Sieler, 95 Wn.2d at 45-46.
[35] Sieler, 95 Wn.2d at 48.
[36] Sieler, 95 Wn.2d at 48.
[37] Sieler, 95 Wn.2d at 48.
[38] Sieler, 95 Wn.2d at 49.
[39] Sieler, 95 Wn.2d at 49.
[40] 183 Wn.2d 610, 352 P.3d 796 (2015).

found that when informants only gave their names, where the State could point to no observations supporting reasonable suspicion of a crime, and where officers did not contact witnesses who had called 911 and were only able to verify that a female matching the description given by an informant was located in the general area, police did not have sufficient indicia of reliability to detain that person.[41]

Here, the informant gave his name and reported that he saw bicyclists, a car, and a truck in a parking lot after hours, asserting that this was a drug deal. He gave no further information supporting his conclusion. The State does not identify any evidence of criminal activity. It shows only that Officer Hannawalt saw a truck similar in description and location to that described by the informant. Kemnow's confirmation that he had seen bicyclists and a Nissan matching the informant's information did not amount to evidence of criminal activity, nor is it relevant to this court's inquiry because this occurred after Officer Hannawalt seized Kemnow. Finally, Officer Hannawalt did not contact the informant to corroborate that the informant reliably obtained the information he reported. Thus, when Officer Hannawalt seized Kemnow, he had no reasonable suspicion of criminal activity.

---

[41] Z.U.E., 183 Wn.2d at 623.

We thus conclude that the State failed to prove any constitutional justification for Officer Hannawalt's seizure of Kemnow. The evidence found in the ensuing search must be suppressed.

## CONCLUSION

Because Officer Hannawalt seized Kemnow and because the State fails to show that Officer Hannawalt had reasonable, articulable suspicion to justify the seizure, the evidence the officer found after an unconstitutional seizure must be suppressed as fruit of the poisonous tree. We reverse and remand for further proceedings consistent with this opinion.

*Leach, J.*

WE CONCUR:

*Becker, J.*

*Jan, J.*