

**FILE**

IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE JUL 1 0 2014

_Madsen, C.J._
CHIEF JUSTICE

This opinion was filed for record
at 8:00 am on July 10, 2014

for Ronald R. Carpenter
Supreme Court Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | |
| Respondent, | ) | No. 89253-9 |
| | ) | |
| v. | ) | En Banc |
| | ) | |
| TANNER ZACHARY ROY RUSSELL, | ) | |
| | ) | Filed **JUL 1 0 2014** |
| Petitioner. | ) | |
| | ) | |

OWENS, J. -- In certain situations, a police officer may briefly frisk a person to search for weapons that might pose a risk to officer and bystander safety. When justified, these protective frisks do not violate the constitutional prohibition against unreasonable invasions of individual privacy. In this case, we are asked to further define the permissible scope of these protective frisks. An officer stopped Tanner Zachary Roy Russell for violating several minor traffic laws. The officer recognized Russell from a previous encounter where Russell had told officers he was not armed, when in fact he had a small gun in his pocket. Fearing for his safety, the officer frisked Russell for weapons and felt a small box in Russell's pants pocket. The

officer removed the box, opened it, and found a syringe filled with methamphetamine. We hold that the initial protective frisk was justified to protect officer safety, but the warrantless search of the container was not because it exceeded the permissible scope of a protective frisk.

## FACTS

At 11:00 p.m. on September 5, 2011, Officer Derrick Makein was on patrol in Centralia when he observed a person riding a bicycle without a headlight, in violation of traffic laws. *See* RCW 46.61.780. Officer Makein saw the cyclist change into the left lane and travel for several blocks in the direction of oncoming traffic, another traffic violation. Officer Makein pulled the cyclist over at a nearby gas station.

After pulling the cyclist over, Officer Makein recognized him as Russell, a passenger in a traffic stop that the officer made a week earlier. During the prior stop, Officer Makein asked Russell if he had any weapons on him of any kind and Russell said no. But during the course of the stop, another officer found a loaded .22 caliber, derringer-style handgun in Russell's pocket. The gun was a very small and easily concealable weapon meant for close-range shooting. The officers confiscated the gun and issued Russell a citation.

Because of that previous encounter, Officer Makein feared that Russell might have a weapon and decided to frisk him. He was especially suspicious because Russell had lied about the gun during the previous stop and because the gun was so

concealable. During the frisk Officer Makein felt a small, hard container in Russell's pants pocket. He testified that the container was approximately six inches long, four inches wide, and "an inch or two" deep. Verbatim Report of Proceedings (VRP) at 18.

Officer Makein testified to what happened next:

A. . . . I know that box was not a gun, but based on how big the box or that container was and the fact that he hid a very small caliber weapon in his front pocket the previous contact, I still felt that I needed to check what's in that box for my safety.

Q. Okay. So how did you go about doing that?

A. Once I felt that to make sure everything matches as far as how big and remember how big the other weapon was, I asked him, What's this. He says, It's a box. Do you mind if I take it out? He says, Okay.

Q. So you did ask him for consent to search the box?

A. (Witness nods head.)

Q. Did he appear to have any problem with that?

A. No.

*Id.* at 18-19. Based on that testimony, the trial court made a finding of fact that Russell consented to the search of the container. Officer Makein opened the container and found one syringe containing methamphetamine. Though he testified that he performed the search to ensure that the box did not contain a gun, Officer Makein admitted "that the syringe weighed only a fraction of what the pistol weighed." Clerk's Papers at 75.

3

The State charged Russell with possession of a controlled substance; the syringe was the only evidence against him. Russell moved to suppress the evidence, arguing that the search was unlawful, and the trial court granted his motion and dismissed the case. The trial court found that although the initial stop was justified, the frisk was not because the stop occurred in a well-lit area and Russell did not verbally threaten the officer, nor did he make any threatening gestures or movements. The court also found that even if the frisk was justified, the search of the container was not because it posed no threat once it was in the control of the officer.

In a split, unpublished opinion, the Court of Appeals reversed the suppression order and remanded the case for trial. *State v. Russell*, noted at 175 Wn. App. 1064, 2013 WL 3967169, at \*7-9. The majority held that the initial protective frisk and the subsequent removal and search of the container were reasonable. 2013 WL 3967169, at \*7-9. The dissent agreed that the initial frisk was reasonable but concluded that the officer exceeded his authority when he searched the container. *Id.* at \*11 (Quinn-Brintnall, J., dissenting in part). We granted review. *State v. Russell*, 179 Wn.2d 1001, 315 P.3d 530 (2013).

## ISSUES

1. Was the officer's initial protective frisk justified by concerns of officer safety?

4

2. Was the officer's warrantless search of the container discovered during the search also justified by concerns of officer safety?

3. Was the search otherwise permissible because the petitioner validly consented to it?

## STANDARD OF REVIEW

When reviewing a trial court's ruling on a motion to suppress, we determine whether substantial evidence supports the trial court's findings of fact and whether the findings of fact support the trial court's conclusions of law. *State v. Garvin*, 166 Wn.2d 242, 249, 207 P.3d 1266 (2009). "Evidence is substantial when it is enough 'to persuade a fair-minded person of the truth of the stated premise.'" *Id.* (quoting *State v. Reid*, 98 Wn. App. 152, 156, 988 P.2d 1038 (1999)). We review conclusions of law de novo. *Id.*

## ANALYSIS

### 1. The Initial Protective Frisk Was Justified

"As a general rule, warrantless searches and seizures are per se unreasonable, in violation of the Fourth Amendment to the United States Constitution and article I, section 7 of the Washington Constitution."[1] *Id.* There are several narrowly drawn exceptions to that rule, and the State bears a heavy burden to prove by clear and

---

[1] We analyze the issues presented in this case under the Washington Constitution because article I, section 7 "grants greater protection to individual privacy rights than the Fourth Amendment." *State v. Harrington*, 167 Wn.2d 656, 663, 222 P.3d 92 (2009).

convincing evidence that a warrantless search falls within one of those exceptions. *Id.* at 249-50.

One exception to the warrant requirement is the so-called *Terry* stop and frisk that was first articulated by the Supreme Court of the United States in *Terry v. Ohio*, 392 U.S. 1, 27, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). It allows an officer to conduct a limited pat-down of the outer clothing of a person in an attempt to discover weapons that could cause harm. *Id.* at 30-31. A protective frisk is justified "when an officer can point to 'specific and articulable facts' which create an objectively reasonable belief that a suspect is 'armed and presently dangerous.'" *State v. Collins*, 121 Wn.2d 168, 173, 847 P.2d 919 (1993) (quoting *Terry*, 392 U.S. at 21-24). For example, if an officer has information that an individual could have a gun, that information, "when combined with other circumstances that contribute to a reasonable safety concern, . . . could lead a reasonably careful officer to believe that a protective frisk should be conducted to protect his or her own safety and the safety of others." *Id.* at 177. "[C]ourts are reluctant to substitute their judgment for that of police officers in the field. 'A founded suspicion is all that is necessary, some basis from which the court can determine that the detention was not arbitrary or harassing.'" *State v. Belieu*, 112 Wn.2d 587, 601-02, 773 P.2d 46 (1989) (emphasis omitted) (quoting *Wilson v. Porter*, 361 F.2d 412, 415 (9th Cir. 1966)).

In this case, the stop and frisk was justified because Officer Makein could point to specific and articulable facts that supported a belief that Russell could be armed and dangerous. After legitimately stopping Russell for traffic violations, Officer Makein immediately recognized him from a stop one week prior. At that prior encounter, Russell denied having a weapon when he in fact possessed a small derringer-style gun. Officer Makein testified that this specific and articulable fact made him fear for his safety. In addition, the encounter was late at night and Officer Makein was the only officer making the stop. These circumstances contribute to a reasonable safety concern. Nothing about the initial stop and frisk was arbitrary or harassing. We hold that the officer was justified in performing the initial protective frisk.

This case is similar to *Collins*, where this court upheld the warrantless stop and frisk of a suspect whom the officer recognized from an encounter two months prior. 121 Wn.2d at 177. During the previous encounter, the officer found "'a large amount of either .38 or .357' ammunition, a holster, and a set of handcuffs" in the suspect's truck. *Id.* at 171. That fact, along with the timing of the latter stop (it was at 4:00 a.m.) and the officer's knowledge that the suspect had a prior felony arrest, led the court to conclude that the frisk was reasonable. *Id.* at 176-77.

The justification for the initial frisk is stronger in this case than in *Collins*. First, the prior encounter occurred just one week before the stop in question rather than two months. Second, the officer actually found a gun in the prior encounter

7

rather than ammunition and a holster. Third, Russell lied about the gun in the prior encounter while the suspect in *Collins* voluntarily revealed the ammunition. *Id.* at 171. Finally, Officer Makein was alone during the stop in question and therefore more at risk than the officer in *Collins*, who made the stop with a partner. *Id.* at 170-71. Thus, *Collins* supports our holding that the initial protective frisk did not violate Russell's constitutional rights.

Russell argues that if the officer used the prior encounter to justify the frisk in this case, then the State must prove the validity of the prior encounter or the frisk would be unconstitutional as "fruit of the poisonous tree."[2] Pet'r's Suppl. Br. at 12. We disagree. Russell cites no case holding that the "fruit of the poisonous tree" doctrine applies to *Terry* frisks, and it would be absurd to hold that it does. The purpose of *Terry* frisks is to protect officer and bystander safety. An officer need only identify specific and articulable facts that create an objectively reasonable belief of danger. We would undermine the purposes of *Terry* and create unjustifiable risks if we hold that an officer in the field must ignore specific facts that indicate potential danger. We reject Russell's "fruit of the poisonous tree" argument.

---

[2] Simply put, the "fruit of the poisonous tree" doctrine requires courts to exclude any evidence obtained as a direct result of an unconstitutional search. *State v. Eisfeldt*, 163 Wn.2d 628, 640, 185 P.3d 580 (2008) (citing *Wong Sun v. United States*, 371 U.S. 471, 487-88, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963)).

## 2. *The Warrantless Search of the Container Discovered during the Protective Frisk Was Not Justified*

The scope of a valid *Terry* frisk is limited to protective purposes. *Garvin*, 166 Wn.2d at 250. The frisk must be brief and nonintrusive. *Id.* at 254. "If the officer feels an item of questionable identity that has the size and density such that it might or might not be a weapon, the officer may only take such action as is necessary to examine such object." *State v. Hudson*, 124 Wn.2d 107, 113, 874 P.2d 160 (1994). "[O]nce it is ascertained that no weapon is involved, the government's limited authority to invade the individual's right to be free of police intrusion is spent." *State v. Allen*, 93 Wn.2d 170, 173, 606 P.2d 1235 (1980).

The search of the container in this case violated Russell's constitutional right to be free from police intrusion. The officer felt a small container, removed it, and then opened it without a warrant. He admitted that the contents of the container weighed only a fraction of what the pistol weighed. Therefore, we conclude that no reasonable person could believe that the container housed a gun. At the point at which he discovered that the container did not house a weapon, his authority to invade Russell's privacy and search the container any further ended.

This case is similar to *Allen*, where this court held that the warrantless search of a wallet found during a stop and frisk was unconstitutional. *Id.* The court determined that once the officer discovered that the wallet was not a weapon, the permissible scope of the frisk ended. *Id.* The Court of Appeals applied similar logic and held that

the warrantless search of a cigarette pack found during a *Terry* frisk was unconstitutional in *State v. Horton*, 136 Wn. App. 29, 38-39, 146 P.3d 1227 (2006). The court in *Horton* rejected the State's argument that the cigarette pack could have contained a small weapon like a razor blade or another small, sharp object. *Id.* at 37-38. The court feared that if it accepted the State's argument, the scope of the *Terry* frisk would be "essentially unlimited, since the tiniest object can conceivably be used offensively." *Id.* at 38.

These cases show that in Washington, warrantless searches of small containers found during protective frisks are generally unconstitutional. The container itself was not a weapon, and the officer had no authority to search through it after realizing that it posed no threat. Furthermore, once the officer took control of the container the risk of danger ended. He could have completed the encounter while holding onto the container, thus eliminating any perceived danger.

The State argues that the search was justified because the officer had to return the container at the end of the encounter. While it is true that the officer had to return the container, it does not follow that the officer may always search it first. *See State v. Glossbrener*, 146 Wn.2d 670, 682, 49 P.3d 128 (2002) (holding that an officer violated a detainee's rights when he performed a protective search of the passenger compartment of the detainee's car after completing his investigation and "the only thing left was for [the detainee] to leave"). *Terry* frisks are limited, external pat-

downs to ensure safety. Any further intrusion must end as soon as an officer discovers that the suspect does not have a weapon. An officer may not search through a detainee's personal effects under the unreasonable belief that they may contain a weapon. We hold that the search of the container violated Russell's constitutional rights.

### 3. *The State Did Not Show That Russell Voluntarily Consented to the Search, and Therefore His Supposed Consent Does Not Otherwise Justify the Search*

As mentioned above, the trial court found that Russell consented to the search of the container in its findings of fact, and the State argues that therefore the search was permissible. We disagree. The trial court's finding of consent is not supported by the evidence and therefore cannot justify the search.

Police do not need a warrant for searches if they have valid consent. *State v. Ferrier*, 136 Wn.2d 103, 111, 960 P.2d 927 (1998). The State has the burden to show that the consent was voluntarily given. *State v. Bustamante-Davila*, 138 Wn.2d 964, 981, 983 P.2d 590 (1999). "Whether consent is freely given is a question of fact dependent upon the totality of the circumstances." *Id.* A court considers several factors, including "(1) whether *Miranda*[3] warnings had been given prior to obtaining consent; (2) the degree of education and intelligence of the consenting person; and (3) whether the consenting person had been advised of his right not to consent." *State v.*

---

[3] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

*Shoemaker*, 85 Wn.2d 207, 212, 533 P.2d 123 (1975). No one factor is dispositive. *Id.*

The State has not met its burden to prove that Russell voluntarily consented to the search. In fact, the record does not show that Russell consented at all. The officer testified only that Russell did not "appear to have any problem" with the search. VRP at 19. The State offered no additional evidence of consent. Even the Court of Appeals noted that the evidence supporting the finding of consent is "sketchy." *Russell*, 2013 WL 3967169, at *5 n.3. We review findings of fact for substantial evidence, and here, we do not find substantial evidence supporting the court's finding that Russell consented to the search. Additionally, the record contains no evidence that Russell's supposed consent was voluntary. The officer did not give Russell *Miranda* warnings nor did he advise him of the right to refuse consent. Nor did the State establish Russell's education or intelligence level. The search cannot be otherwise justified on the basis of Russell's consent.

## CONCLUSION

We hold that while the initial protective frisk was permissible, the officer violated Russell's constitutional rights when he removed a small container from his pocket and searched it without a warrant. The officer admitted that the container's contents weighed only a fraction of what a pistol weighs. Because the officer did not have a reasonable belief that the container housed a gun, the warrantless search was

not justified. Additionally, any threat to the officer's safety ended when he took control of the container and he did not have authority to search it while investigating traffic infractions. Finally, we hold that the search was not justified on the basis of consent because the State did not show that Russell consented to the search. For these reasons, we reverse the Court of Appeals and remand to the trial court for proceedings consistent with this opinion.

WE CONCUR:

No. 89253-9

GONZÁLEZ, J. (concurring)—I generally concur with the majority both in principle and in outcome. I write separately, however, for two reasons. First, I stress that we have not held, and do not hold today, that the "fruit of the poisonous tree" doctrine cannot apply to a *Terry*[1] frisk as a matter of course. *See* majority at 8. Not only do we not need to consider this issue given that Officer Makein's search went beyond the permissible scope of a *Terry* frisk and therefore there are other grounds for exclusion, but also I am unwilling to foreclose the applicability of the doctrine to *Terry* frisks on the facts before us. Second, the majority concludes that "while the initial protective frisk was permissible, the officer violated Russell's constitutional rights when he removed a small container from his pocket and searched it without a warrant." Majority at 12. I partially disagree. Russell's constitutional rights were not violated when the small container was removed from his pocket. His rights were violated immediately after, when the officer realized that it did not contain a weapon and searched the container

---

[1] *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968)

1

anyway. Removing a container from a jacket that could potentially contain a weapon does not require a warrant as part of an otherwise lawful *Terry* stop. However, searching one once it has been removed, when the officer no longer has any reason to believe that a weapon is contained therein or that a weapon could be used against him, does not comport with article I, section 7.

With these observations, I respectfully concur.

González, J.