FILED
COURT OF APPEALS
DIVISION II

2015 AUG 25 AM 8: 45

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 45833-1-II |
| Respondent, | |
| v. | |
| B.J.C., | UNPUBLISHED OPINION |
| Appellant. | |

SUTTON, J. — BJC[1] appeals his adjudications for first degree child rape and first degree child molestation. He argues that the trial court (1) violated his right against self-incrimination by admitting his confession, (2) violated his right to due process by requiring him to register as a sex offender, and (3) abused its discretion by imposing a sentence greater than 150 percent of the maximum for his conviction on his most serious offense. We hold that the trial court (1) properly admitted BJC's confession, (2) did not violate BJC's due process rights by requiring him to register as a sex offender, and (3) did not abuse its discretion in sentencing BJC. Therefore, we affirm.

## FACTS

A seven year old female, CC,[2] alleged that BJC sexually assaulted her. After a child forensics specialist interviewed CC, two police officers, Rich Fletcher and Dave Voelker, went to

---

[1] BJC is a minor; therefore, we use initials to maintain confidentiality.

[2] We use the minor victim's initials to protect the victim's privacy. Gen. Order 2011-1 of Division II, *In re the Use of Initials of Pseudonyms for Child Witnesses in Sex Crime Cases* (Wash. Ct. App.), *available at* http://www.courts.wa.gov/appellate_trial_courts/.

BJC's home, a second floor apartment, to speak with him. BJC came to the door at the officers' request.

While BJC stood in the doorway, the officers identified themselves, told BJC that a complaint had been filed against him, and asked if he would voluntarily answer questions. Fletcher asked BJC if there was somewhere else they could speak, and the three of them walked downstairs into a courtyard adjoining his apartment building. Fletcher told BJC that he could stop the questions at any time and BJC said he understood. Fletcher assured BJC that he did not intend to arrest him. Both officers knew that BJC was 13 years old at the time of their interview.

Although Fletcher considered giving BJC the *Miranda*[3] warning, he did not do so. The officers were dressed in civilian clothes with jackets that covered their guns, handcuffs, and police badges. They did not place BJC in handcuffs or have any physical contact with him or threaten him. The officers' tones were conversational without raised voices.

Once the officers and BJC were in the courtyard, Fletcher explained the allegations to BJC. BJC first denied that he had touched CC and suggested that CC had fabricated the allegations. The officers told BJC that they did not believe him, and BJC began to confess to portions of CC's allegations. Fletcher confronted BJC and said that they knew he was not divulging the entire series of events based on what CC had said, and in response BJC slowly admitted to all of the allegations. BJC divulged information that neither CC's interview nor any other evidence suggested had occurred. The conversation between the officers and BJC lasted 30-40 minutes.

---

[3] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

The State charged BJC with two counts of child rape and one count of child molestation. BJC moved to suppress the statements he made to Fletcher and Voelker. After a CrR 3.5 hearing, the trial court ruled that BJC's statements were admissible because he made them voluntarily and he was not in custody at the time he confessed. The trial court found BJC guilty of one count of first degree child rape and one count of first degree child molestation.[4]

The trial court required BJC to register as a sex offender and sentenced him to two consecutive terms of the standard range sentence for each crime. The trial court ruled that RCW 13.40.180(1) did not apply to limit BJC's sentence to 150 percent of the maximum sentence of BJC's most serious offense, first degree child rape. BJC appeals.

## ANALYSIS

### I. THE TRIAL COURT PROPERLY ADMITTED BJC'S CONFESSION

BJC argues that the trial court violated his right against self-incrimination by admitting his confession because he involuntarily confessed without first receiving a *Miranda* warning. We disagree.

#### A. Standard of Review

The Fifth Amendment guarantees the right against self-incrimination. U.S. CONST. amend. V. Article 1, section 9 of the Washington Constitution, which also guarantees the right against self-incrimination, is co-extensive with the Fifth Amendment. *State v. Unga*, 165 Wn.2d 95, 100, 196 P.3d 645 (2008).

---

[4] Because the State's second charged count of child rape was based solely on BJC's confession, the trial court ruled that the State failed to prove that count of first degree child rape under the corpus delicti rule.

When reviewing a trial court's CrR 3.5 ruling, we decide whether substantial evidence supports the trial court's findings of fact and whether the findings of fact support the trial court's conclusions of law, which we review de novo. *State v. Russell*, 180 Wn.2d 860, 866-67, 330 P.3d 151 (2014). Substantial evidence is evidence sufficient to persuade a fair-minded person of its truth. *Russell*, 180 Wn.2d at 866-67. Unchallenged findings of fact are verities on appeal. *State v. Bonds*, 174 Wn. App. 553, 563, 299 P.3d 663, *review denied*, 178 Wn.2d 1011 (2013).

BJC assigns error to the trial court's determination that his confession was voluntary and the product of rational intellect and free will, that he was not subjected to custodial interrogation without *Miranda* warnings, and that therefore his statements to Fletcher and Voelker are admissible. Although he does not specifically list the paragraphs he claims are erroneous, these assignments of error point to paragraphs four, five, six, and eight of the trial court's findings of fact and conclusions of law. Paragraph four stated that "it may be reasonable for a thirteen year old child to believe they were in custody as it would take a rather bold move to walk away from the police, but the statements were not made while [BJC] was in custody." Clerk's Papers (CP) at 43. Paragraph five stated that "[BJC] chose the location the conversation [between he, Fletcher, and Voelker] would take place, which shows the questioning was not done in custody and makes the statements voluntarily made." CP at 43. Paragraph six stated that "[BJC] did not have his free will inhibited by [Fletcher and Voelker]." CP at 43. Finally, paragraph eight states the trial court's ultimate conclusion, that BJC's confession is admissible.

BJC's assignments of error do not appear to challenge the trial court's remaining paragraphs in its findings of fact and conclusions of law: (1) paragraph two, that BJC's conversation with Fletcher and Voelker lasted 30-45 minutes, (2) paragraph three, that the

conversation was cordial, and (3) paragraph seven, that Fletcher's and Voelker's interaction with BJC was not combative or confrontational. Because BJC did not challenge these three findings or conclusions, they are verities on appeal.

The trial court did not err in admitting BJC's confession.

B. BJC Was Not in Custody

BJC argues that the trial court erred in admitting his confession because he was in custody when Fletcher and Voelker questioned him in the courtyard and they did not give him the *Miranda* warning before he confessed. We disagree.

We review a trial court's determination whether a defendant was in custody de novo as a question of law. *State v. Rosas-Miranda*, 176 Wn. App. 773, 779, 309 P.3d 728 (2013). A self-incriminating confession made while a suspect is subject to custodial interrogation is not admissible unless officers provided a *Miranda* warning before the confession. *State v. Piatnitsky*, 180 Wn.2d 407, 412, 325 P.3d 167 (2014), *cert. denied*, 135 S. Ct. 950 (2015). A person is in custody for the purposes of the *Miranda* warning requirement when a reasonable person in the suspect's position would believe that he or she is in police custody to the degree associated with a formal arrest. *State v. Lorenz*, 152 Wn.2d 22, 36-37, 93 P.3d 133 (2004). We determine whether a person is in custody by the totality of the circumstances. *Rosas-Miranda*, 176 Wn. App. at 779. A juvenile's age informs our custody analysis so long as the interrogating officer knew the juvenile's age at the time of the interview. *J.D.B. v. North Carolina*, ___ U.S. ___, 131 S. Ct. 2394, 2406, 180 L. Ed. 2d 310 (2011).

Based on the totality of the circumstances, substantial evidence supports the trial court's findings of fact and conclusions of law in paragraphs four and five that BJC was not subject to

5

custodial interrogation. Fletcher and Voelker asked BJC if he would voluntarily answer some questions. They also asked BJC if there was somewhere else they could speak other than at the front door of the apartment, and, in response, BJC took them downstairs to an open courtyard adjoining his apartment building. The officers were dressed in civilian clothes with their badges and guns covered. BJC agreed to talk to the officers and Fletcher told BJC that he could cease the questioning at any time. BJC replied that he understood. Fletcher told BJC that they would not arrest him. The officers did not place BJC in handcuffs or have any other physical contact with him. Under these circumstances, a reasonable person would not have believed that he was under police custody to the degree associated with a formal arrest. Thus, BJC was not subject to custodial interrogation, and the officers were not required to give him the *Miranda* warnings for his confession to be admissible.

C. BJC Confessed Voluntarily

BJC also argues that the trial court erred in ruling his confession was admissible because his inculpatory statements to Fletcher and Voelker were not voluntary. We disagree.

We review for substantial evidence a trial court's ruling that a confession was voluntary by a preponderance of the evidence. *State v. Rafay*, 168 Wn. App. 734, 757-58, 285 P.3d 83 (2012), *review denied*, 175 Wn.2d 1023 (2013), *cert. denied*, 134 S. Ct. 170 (2013) (explaining that our Supreme Court has rejected independent appellate review of the record in a confession case). A confession is admissible in court if it was made voluntarily and was not the product of coercion or improper inducement; voluntariness is determined by the totality of the circumstances. *Unga*, 165 Wn.2d at 100-01. Washington courts have a "responsibility to examine confessions of a juvenile with special care." *Unga*, 165 Wn.2d at 103. Relevant factors in the totality of the

6

circumstances analysis include the person's age, maturity, experience, intelligence, education, background, physical condition, mental health, whether the person has the capacity to understand the police's warning, the interrogation's location and length, any police coercion, and whether the police told the juvenile that he or she has the right to remain silent. *Unga*, 165 Wn.2d at 101, 103.

Based on the totality of the circumstances, substantial evidence in the record supports the trial court's findings of fact and those findings in turn support the trial court's conclusions of law in paragraphs five and six that BJC's confession was voluntarily. After Fletcher and Voelker identified themselves to BJC, he agreed that they could ask him questions and he led the officers downstairs to the courtyard. Fletcher informed BJC that he could cease the questioning at any time and BJC said that he understood. The officers did not threaten BJC and their tone was conversational. As the trial court found in paragraphs two and seven, which BJC does not challenge, BJC's interaction with Fletcher and Voelker lasted 30-40 minutes and was "not combative or confrontational in nature." CP at 43. The challenged findings are supported by substantial evidence in the record and the totality of the circumstances demonstrate that the trial court did not err in concluding that BJC's confession was voluntary, and therefore, BJC's statements were admissible.

## II. RCW 9A.44.130 DOES NOT IMPAIR THE CONSTITUTIONAL RIGHT TO TRAVEL

BJC argues that the trial court's order requiring him to register as a sex offender must be reversed because the sex offender registration statute, RCW 9A.44.130, violates the substantive due process rights of juveniles on its face and as applied to him. Specifically, BJC argues that the sex offender registration statute burdens his fundamental right to travel. We disagree.

7

We review the constitutionality of a statute de novo. *State v. Smith*, 185 Wn. App. 945, 952, 344 P.3d 1244, *review denied*, 352 P.3d 187 (2015). To demonstrate facial unconstitutionality, BJC must show that no set of circumstances exist in which RCW 9A.44.130 could be applied constitutionally. *City of Redmond v. Moore*, 151 Wn.2d 664, 669, 91 P.3d 875 (2004). To demonstrate that RCW 9A.44.130 is unconstitutional as applied to him, BJC must show that the statute is unconstitutional in the context of his actions or intended actions. *Moore*, 151 Wn.2d at 668-69. Both a facial and as-applied challenge require BJC to show that RCW 9A.44.130 impairs a constitutional right. *Smith*, 185 Wn. App. at 952. BJC argues that this statute burdens his constitutional right to travel.

The right to travel, including travel within a state, is a fundamental right under the United States Constitution; impairing the right to travel cannot be deprived without due process of law. *Smith*, 185 Wn. App. at 953; U.S. CONST. amends. V, XIV. A state law implicates the right to travel when it "actually deters such travel and where deterring travel is the law's primary objective." *Smith*, 185 Wn. App. at 953. A state law also implicates the right to travel when the law uses a classification to penalize the exercise of that right. *Smith*, 185 Wn. App. at 953. BJC argues that RCW 9A.44.130 prevents him from traveling away from home for more than three nights. We have already rejected this argument in *Smith*. 185 Wn. App. at 953-54.

RCW 9A.44.130 requires convicted sex offenders, including juvenile sex offenders, to register with the sheriff for the county of the person's residence. "[I]t is well established that the term 'residence' as used in RCW 9A.44.130 means 'a place to which one intends to return, as distinguished from a place of temporary sojourn or transient visit.'" *Smith*, 185 Wn. App. at 954 (quoting *State v. Pickett*, 95 Wn. App. 475, 478, 975 P.2d 584 (1999)). No language in

8

RCW 9A.44.130 prevents BJC from traveling outside the state or within the state. *Smith*, 185 Wn. App. at 953. The statute does not require BJC to provide notice of intent to travel from his residence; the statute requires that he register only when he *changes* his residence or becomes transient. RCW 9A.44.130(4), (5). Thus, RCW 9A.44.130 is not unconstitutional on its face. *Smith*, 185 Wn. App. at 954.

BJC has not demonstrated that RCW 9A.44.130 actually deters him from traveling or penalizes him for exercising his right to travel. BJC's facial constitutional and as-applied challenges fail.

III. THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN FAILING TO LIMIT BJC'S SENTENCE

Lastly, BJC argues that the sentencing court erred by not limiting his sentence to 150 percent of the term for first degree child rape, his most serious offense, because he argues that his two adjudications constitute a "single act" under RCW 13.40.180(1)(a). We disagree.

The issue is whether BJC's adjudications for first degree child rape and first degree child molestation constitute the "same criminal conduct" under RCW 9.94A.589(1)(a) for sentencing purposes. A juvenile's disposition for two or more offenses must run consecutively unless "the offenses were committed through a single act or omission." RCW 13.40.180(1)(a). In that case, the total sentence the trial court may impose is limited to 150 percent of the term imposed for the most serious offense, here first degree child rape.[5] RCW 13.40.180(1)(a). The trial court ruled that because BJC's two adjudications did not constitute the same criminal conduct, the 150 percent

---

[5] If the offenses were *not* committed through a "single act or omission," the total sentence may not exceed three hundred percent of the imposed sentence for the most serious offense. RCW 13.40.180(1)(b).

limit in RCW 13.40.180(1)(a) did not apply to the trial court's sentence for BJC's most serious offense. Because this decision involves a factual inquiry, we review the trial court's application of the facts to the law for abuse of discretion. *State v. Kloepper*, 179 Wn. App. 343, 357, 317 P.3d 1088, *review denied*, 180 Wn.2d 1017 (2014). When the record supports only one conclusion on the same criminal conduct issue, the trial court abuses its discretion at arriving at a contrary result, but if either conclusion is supported adequately by the record, the trial court properly exercised its discretion. *State v. Graciano*, 176 Wn.2d 531, 537-38, 295 P.3d 219 (2013).

We analyze the phrase "single act or omission" in RCW 13.40.180(1)(a) in the same manner as we analyze the phrase "same course of conduct" in the Sentencing Reform Act,[6] because both focus on the defendant's objective criminal intent. *State v. Contreras*, 124 Wn.2d 741, 748, 880 P.2d 1000 (1994). Two offenses against a single victim constitute the "same criminal conduct" if they (1) involved the same criminal intent, (2) occurred at the same time, and (3) were committed at the same place. *Kloepper*, 179 Wn. App. at 356-57; RCW 9.94A.589(1)(a). Both BJC and the State agree that BJC's offenses occurred at the same time and place and involved the same victim.

To determine whether BJC's two adjudications constitute the same criminal conduct, we focus on whether defendant's intent, viewed objectively, changed from one crime to the next and whether one crime furthered the other. *State v. Grantham*, 84 Wn. App. 854, 858, 932 P.2d 657 (1997). We construe the phrase "the same criminal conduct" in RCW 9.94A.589(1)(a) narrowly to disallow most claims that multiple offenses constitute the same criminal conduct.

---

[6] Sentencing Reform Act of 1981, ch. 9.94A RCW.

*Graciano*, 176 Wn.2d at 540. The defendant bears the burden of proving that his adjudications were part of the same criminal conduct. *Graciano*, 176 Wn.2d at 538.

In *Grantham*, the defendant committed two separate rapes that we held were not the "same criminal conduct" because he committed one rape before beginning the second, he had the "presence of mind" to threaten the victim, he used new physical force to obtain compliance and accomplish the second rape, and the victim asked him to stop and take her home between the two rapes. *Grantham*, 84 Wn. App. at 859. Under these facts, we held that the trial court properly found that Grantham, after he completed one act, "had the time and opportunity to pause, reflect, and either cease his criminal activity or proceed to commit a further criminal act." *Grantham*, 84 Wn. App. at 859. Because Grantham chose to proceed, he formed a new intent to commit the second act. *Grantham*, 84 Wn. App. at 859.

Like Grantham, BJC "had the time and opportunity to pause, reflect, and either cease his criminal activity or proceed to commit a further criminal act" between the commission of his offenses. *Grantham*, 84 Wn. App. at 859. According to Fletcher's testimony, BJC said that he stopped one sex act before beginning another because CC told him to stop each time. Instead of stopping, BJC re-positioned CC and decided to commit a different sexual act. The trial court, under these facts, properly concluded that BJC's offenses did not constitute the same criminal conduct. Therefore, the trial court did not abuse its discretion by declining to limit BJC's sentence to 150 percent of the maximum sentence for his most serious offense, first degree child rape.

No. 45833-1-II

## CONCLUSION

We affirm BJC's adjudications, holding that the trial court properly admitted his confession, the sex offender registration statute does not impair BJC's fundamental right to travel, and the trial court did not abuse its discretion in sentencing BJC.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

SUTTON, J.

We concur:

BJORGEN, A.C.J.

LEE, J.

12