# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 47765-3-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| RICHARD DWAYNE CHRISTENSEN, | |
| Appellant. | |

MAXA, J. – Richard Christensen appeals his conviction of first degree unlawful possession of a firearm. Christensen argues that the trial court erred in denying his motion to suppress the firearm police officers found after detaining him. We hold that (1) the officers had authority to make an investigative *Terry*[1] stop because they had a reasonable suspicion to detain Christensen based on his shared characteristics with a male robbery suspect and Christensen's close proximity to the suspect's believed associate, (2) the officers did not exceed the scope of a permissible investigative stop by conducting a protective frisk of Christensen, (3) the officers had probable cause to arrest Christensen for carrying a concealed weapon without a license, and (4) Christensen's trial counsel was not ineffective in not challenging the scope of the investigative stop because the officers did not exceed the scope of the stop. Accordingly, we

---

[1] *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

affirm the trial court's denial of the motion to suppress, and therefore we affirm Christensen's conviction.

FACTS

*Robbery Incident*

On January 30, 2015, Timothy Anderson called the police and reported being robbed by the male associate of a prostitute named Shayna Vasser-Learn. The man, Vasser-Learn, and another woman confronted Anderson and the man took his money. Anderson told the police that man kept his hand in his right pocket during the altercation, which gave him the impression that he may have had a gun.

Anderson described the man to the police as a black male, five foot nine or ten inches tall, with cornrow styled hair, and a tattoo on his neck. The tattoo was described as having more than one word, which may have included the word "bitch." Anderson told law enforcement that the man left in a newer, dark colored Dodge Charger.

*Detention of Christensen*

Shortly after the robbery, law enforcement officers arranged a sting operation to try to identify the robbery suspect. Officers arranged an encounter with Vasser-Learn at the Days Inn hotel in Fife. Sergeant Kevin Farris and Officer Ryan Micenko were called in to the area to provide backup. The officers were informed that the robbery suspect (1) was a light-skinned black male, five feet nine inches tall, with cornrow style hair, (2) had written tattoos on both sides of his neck with the word "bitch" in one of them, (3) was associated with a black Dodge Charger, and (4) had implied to Anderson that he had a handgun.

Micenko arrived on scene and parked near the Days Inn where he could observe the motel. Detectives later radioed that Vasser-Learn had arrived at the Days Inn in a Dodge Charger. From Micenko's location in his vehicle, he observed a person later identified as Christensen walking through the Days Inn parking lot. Micenko did not see whether Christensen arrived in a Charger. Detectives then radioed that Vasser-Learn was in custody.

Micenko observed that Christensen was a light-skinned black male, had tattoos on his neck, and was wearing a hat. At that point, Micenko exited his patrol car and told Christensen to stop and put his hands on the vehicle. Micenko stated that Christensen was startled by his presence and appeared to be looking around for an avenue of escape.

Micenko noticed that Christensen was wearing baggy clothing, which appeared to be weighed down by an object. Farris arrived within a minute and informed Christensen that he was not under arrest but also was not free to leave. Farris then gave Christensen the *Miranda*[2] warnings. Farris asked Christensen if he had any weapons and he said no. Micenko frisked Christensen and felt an object that felt like a small handgun. He opened Christensen's coat pocket and discovered a handgun. The officers asked Christensen if he had a concealed weapons permit, and he admitted that he did not. At that time, Micenko noticed Christensen's neck tattoos said "Zyzy" and "Libra." Clerk's Papers (CP) at 24. Micenko also removed Christensen's hat, revealing a bald head.

Micenko handcuffed Christensen and placed him in the patrol car. The officers ran a records check on Christensen. While waiting for the results, Micenko asked Christensen if he

---

[2] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

had a prior felony, and Christensen responded that he did. Shortly thereafter, the results of the background check confirmed that Christensen had previously been convicted of a felony. Micenko advised Christensen that he was under arrest for unlawful possession of a firearm.

*Suppression Hearing*

The State charged Christensen with first degree unlawful possession of a firearm. Christensen filed a motion to suppress the seized firearm, arguing that there was no lawful basis for Micenko's initial detention of him. After a CrR 3.6 hearing, the trial court denied Christensen's motion to suppress, concluding that the investigative detention was valid and the frisk was reasonable. The trial court entered detailed findings of fact and conclusions of law to support its ruling.

*Conviction*

Christensen's case then proceeded to a bench trial based on stipulated facts, and the trial court found him guilty of first degree unlawful possession of a firearm. Christensen appeals his conviction.

ANALYSIS

A.    STANDARD OF REVIEW

When reviewing the trial court's denial of a CrR 3.6 suppression motion, we determine whether substantial evidence supports the challenged findings of fact and whether the findings of fact support the conclusions of law. *State v. Russell*, 180 Wn.2d 860, 866, 330 P.3d 151 (2014). Evidence is substantial when it is enough to persuade a fair-minded person of the truth of the finding. *Id.* at 866-67. Unchallenged findings of fact are considered verities on appeal. *State v. Lohr*, 164 Wn. App. 414, 418, 263 P.3d 1287 (2011). We review de novo the trial court's

conclusions of law pertaining to the suppression of evidence. *State v. Fuentes*, 183 Wn.2d 149, 157, 352 P.3d 152 (2015).

B.      JUSTIFICATION FOR INVESTIGATIVE STOP

Christensen argues that his initial detention was not a permissible investigative stop because Micenko did not have a reasonable suspicion that he had committed a crime. We disagree.

1.      Legal Principles

Under the Fourth Amendment to the United States Constitution and article I, section 7 of the Washington Constitution, a police officer generally cannot seize a person without a warrant. *Fuentes*, 183 Wn.2d at 157-58. The State bears the burden of showing that the seizure falls within one of the carefully drawn exceptions to the warrant requirement. *State v. Z.U.E.*, 183 Wn.2d 610, 617, 352 P.3d 796 (2015). One established exception is a brief investigative detention of a person, known as a *Terry* stop. *Id.*

For an investigative stop to be permissible, a police officer must have had a "reasonable suspicion" based on specific and articulable facts that the detained person was or was about to be involved in a crime. *Id.* The available facts "must connect the particular person to the particular crime that the officer seeks to investigate." *Id.* at 618 (italics omitted).

We determine the propriety of an investigative stop – the reasonableness of the officer's suspicion – based on the "totality of the circumstances." *Fuentes*, 183 Wn.2d at 158. "The totality of circumstances includes the officer's training and experience, the location of the stop, the conduct of the person detained, the purpose of the stop, and the amount of physical intrusion

on the suspect's liberty." *Id.* The focus is on what the officer knew at the inception of the stop.
*Id.*

A police officer can rely on his or her experience to identify seemingly innocent facts as
suspicious. *State v. Moreno*, 173 Wn. App. 479, 492, 294 P.3d 812 (2013). Facts that appear
innocuous to an average person may appear suspicious to a police officer in light of past
experience. *Id.* at 493.

If an officer did not have a reasonable suspicion of criminal activity under the totality of
circumstances, a detention is unlawful and evidence discovered during the detention must be
suppressed. *Fuentes*, 183 Wn.2d at 158.

2.   Findings of Fact – Substantial Evidence

The trial court made three findings of fact relevant to whether Micenko had a reasonable
suspicion based on specific and articulable facts to detain Christensen.[3] First, in finding of fact
17 the trial court found that Micenko saw Christensen in the parking lot of the Days Inn at the
same time that detectives radioed that Vasser-Learn was at the hotel, and that Christensen's
position was "consistent with having been dropped off at the hotel at the same time as Vasser-
Learn." CP at 98. Christensen did not assign error to this finding, so it is a verity on appeal.

Second, in finding of fact 21 the trial court found that Micenko noticed that Christensen
"had a tattoo of writing on his neck but could not read what the writing said." CP at 98.
Christensen did not assign error to this finding, so it is a verity on appeal.

---

[3] The trial court also entered finding of fact 22, which stated that based on the totality of the
circumstances, specific and articulable facts warranted Christensen's detention. But this clearly
is a conclusion of law, and we treat it as such.

Third, in finding of fact 18, the trial court found that "Micenko noted that [Christensen] appeared to match the height, skin tone and general appearance of the male robber." CP at 98. This finding tracks Micenko's testimony. And there is no dispute that both the robbery suspect and Christensen were light skinned black males. Christensen challenges this finding because his height, tattoos, and hair were different than the suspect's.

Regarding height, officers were told that the suspect was approximately five foot nine inches tall. Christensen points out that Farris testified that during the stop he observed that Christensen was over six feet tall. But Micenko testified that Christensen's height "[was] there" compared to the suspect's description. Report of Proceedings (RP) at 79. Micenko obviously was not able to actually measure Christensen's height as he walked toward him. We hold that a few inches difference in height is close enough to support Micenko's estimate and provides substantial evidence that the trial court's finding that Christensen's height matched the suspect's height.

Regarding the neck tattoos, Christensen argues that his appearance was not similar to the suspect's because his tattoos included the words "ZyZy" and "Libra," CP at 24, and the suspect's tattoos included the word "bitch." But Micenko testified that he could not see the words in Christensen's tattoos before the detention. We hold that the fact that both Christensen and the suspect has neck tattoos of writing represents substantial evidence that Christensen matched the suspect's general appearance in that respect.

Regarding the hair, Christensen argues that his appearance was not similar to the suspect's because he was bald and the suspect had cornrows. But Micenko testified that he could not see Christensen's hair before the detention because Christensen was wearing a hat and a

7

hood. Therefore, we hold that substantial evidence supports the trial court's finding even though Micenko later realized Christensen was bald.

We hold that substantial evidence supports the three findings of fact upon which the trial court relied in concluding that Micenko had reasonable suspicion to detain Christensen.

3. Reasonable Suspicion Analysis

The ultimate question is whether the trial court's findings of fact support its legal conclusion that Micenko's detention of Christensen was based on reasonable suspicion and therefore was lawful.

First, Christensen shared some physical characteristics with the robbery suspect – both were light-skinned black males and were of similar height. But these physical characteristics also would describe a significant number of African American men.

Second, Christensen and the suspect both had writing tattooed on their necks. This is a much less common characteristic and therefore when coupled with the physical similarities could support a finding of reasonable suspicion. But the fact that the suspect's tattoo included the word "bitch" and Micenko could not see the words in Christensen's tattoo diminishes this factor to some extent.

Third, Micenko observed Christensen in the parking lot of the Days Inn at approximately the same time that Vasser-Learn arrived there, and the trial court made an unchallenged finding that the evidence was consistent with Christensen having been dropped off at the hotel at the same time as Vasser-Learn. The fact that Christensen and the robbery suspect's associate appeared to arrive at the same place at the same time gives rise to a reasonable inference that Christensen was connected with Vasser-Learn.

Under our totality of the circumstances analysis, the combination of these factors is sufficient to provide reasonable suspicion. Christensen's physical similarities to the robbery suspect – their similar gender, skin color, height, and neck tattoos – combined with Christensen's presence at the same time and place as the prostitute associated with the suspect gave officers a strong indication that Christensen was in fact the suspect.

We hold that Micenko's investigative detention of Christensen was lawful because he had a reasonable suspicion that Christensen was the robbery suspect. Therefore, we affirm the trial court's conclusion of law that Christensen's detention was lawful.

C.   SCOPE OF DETENTION – PROTECTIVE FRISK

Christensen argues that Micenko exceeded the permissible scope of a *Terry* stop by frisking him when the officers easily could have determined that Christensen was not the robbery suspect. We disagree.

A valid investigative stop permits an officer to conduct "a brief frisk for weapons, but only if a reasonable safety concern exists to justify the protective frisk." *Fuentes*, 183 Wn.2d at 158. Specifically, the officer can "pat-down . . . the outer clothing of a person in an attempt to discover weapons that could cause harm." *Russell*, 180 Wn.2d at 867. To justify a protective frisk, the officer must be able point to specific and articulable facts that create an objectively reasonable belief that a suspect is armed and presently dangerous. *Id.* We are reluctant to substitute our judgment for that of police officers in the field, and a founded suspicion from which we can determine that the search was not arbitrary and harassing is all that is necessary. *Id.* at 867-68.

9

Christensen assigns error to findings of fact 27 and 29, in which the trial court found that the officers reasonably concluded that there was probable cause to believe that Christensen was armed and presently dangerous and a reasonable and objective safety concern justified a protective frisk. He also assigns error to the trial court's conclusion of law 2:

> In light of all the facts and circumstances in this case, the frisk of the defendant was a reasonable and minimal intrusion when balanced against the objectively observed facts/behaviors giving rise to reasonable concerns for officer safety.

CP at 100.

Here, after Christensen's initial detainment, Micenko observed that Christensen's clothes were weighed down by an object that could be a gun. Micenko knew that Christensen looked similar to the robbery suspect's description. Christensen appeared to be looking for an avenue of escape, which in Micenko's experience was a behavior that a detainee might exhibit before he or she attempted to fight a police officer. And Micenko knew that they were searching for an armed robbery suspect. Given this evidence, we hold that substantial evidence supports the trial court's findings of fact and that the findings supported the trial court's conclusion of law.

Christensen's primary argument is that Micenko did not *need* to frisk him because the officers easily could have removed his hat and closely examined his tattoo to confirm that he did not match the suspect's description. But " '[t]he fact that the protection of the public might, in the abstract, have been accomplished by "less intrusive" means does not, itself, render the search unreasonable.' " *United States v. Sharpe*, 470 U.S. 675, 687, 105 S. Ct. 1568, 84 L. Ed. 2d 605 (1985) (quoting *Cady v. Dombrowski*, 413 U.S. 433, 447, 93 S. Ct. 2523, 37 L. Ed. 2d 706 (1973)). "The question is not simply whether some other alternative was available, but whether the police acted unreasonably in failing to recognize or to pursue it." *Sharpe*, 470 U.S. at 687.

Here, as discussed above the officers had an objectively reasonable belief that Christensen was armed and dangerous based on their observations and the violent crime they were investigating. We do not require officers to put themselves at risk by attempting to determine whether Christensen was or was not the robbery suspect *before* frisking him.

We will not second guess the judgment of the officers in the field, and we hold that specific and articulable facts created Micenko's objectively reasonable belief that Christensen was armed and dangerous. Accordingly, we hold that Micenko did not exceed the scope of the investigative stop by frisking him.

D.    PROBABLE CAUSE TO ARREST

Christensen argues that his being handcuffed and placed in the patrol car amounted to a custodial arrest without probable cause that he had committed a crime. Based on this contention, Christensen seems to contend that any evidence gathered after the allegedly illegal arrest is inadmissible, including his admission and record check establishing that he had a prior felony. We disagree.

An arrest occurs when a police officer manifests an intent to take a person into custody and actually seizes that person. *State v. Bravo Ortega*, 177 Wn.2d 116, 128, 297 P.3d 57 (2013). The proper inquiry is whether a reasonable person under the circumstances would consider himself or herself under arrest. *Id.* Examples of conduct that would cause a reasonable person to believe he or she was under arrest include "handcuffing the suspect, placing the suspect in a patrol vehicle for transport, and telling the suspect that he or she is under arrest." *Id.*

Here, Christensen was detained, forced to stand with his hands on the patrol car, and then handcuffed and placed in the patrol car. Under the circumstances, we assume that the officers arrested Christensen.

The question is whether the officers had probable cause to arrest Christensen after finding the weapon concealed in his clothes. Christensen concedes that his admission that he did not have a concealed weapons permit established that he violated RCW 9.41.050(1). Under RCW 9.41.050(1)(a), "a person shall not carry a pistol concealed on his or her person without a license to carry a concealed pistol," unless in the person's abode or fixed place of business. Christensen argues without citation to authority that the officers would only be able to give him a civil citation for carrying a concealed weapon without a license. However, a violation of RCW 9.41.050(1)(a) is a misdemeanor. *See* RCW 9.41.810 ("Any violation of any provision of this chapter, except as otherwise provided, shall be a misdemeanor and punishable accordingly"); RCW 9.41.050(1)(a)-(b) (failing to list the penalty for violating RCW 9.41.050(1)(a)). RCW 10.31.100[4] permits an officer to make an arrest without a warrant for a misdemeanor when the offense is committed in the presence of the officer.

Christensen carried the concealed pistol without a license in the presence of the officers. So they had authority to arrest Christensen for that misdemeanor. Therefore, we hold that the officers had probable cause to arrest Christensen when they handcuffed him and placed him in the patrol car.

---

[4] RCW 10.31.100 has been amended since the events of this case transpired, however, these amendments do not impact the statutory language relied on by this court. *See* LAWS OF 2016, ch. 203, § 9 and ch. 113, § 1. Accordingly, we do not include the word "former" before RCW 10.31.100.

E.     INEFFECTIVE ASSISTANCE OF COUNSEL

Christensen argues that his trial counsel's failure to argue that the officers exceeded the scope of the investigative stop amounted to ineffective assistance of counsel. We disagree.

We review claims of ineffective assistance of counsel de novo. *State v. Hamilton*, 179 Wn. App. 870, 879, 320 P.3d 142 (2014). To prevail on an ineffective assistance of counsel claim, the defendant must show both that (1) defense counsel's representation was deficient and (2) the deficient representation prejudiced the defendant. *State v. Grier*, 171 Wn.2d 17, 32-33, 246 P.3d 1260 (2011). We presume that counsel's assistance was effective, until the defendant shows in the record the absence of legitimate or tactical reasons supporting counsel's conduct. *Id.* at 33-34.

We hold that Christensen's ineffective assistance claim fails because he cannot show that defense counsel's performance was deficient. As discussed above, the officers did not exceed the scope of the investigative stop by frisking him and even if Christensen was placed under custodial arrest, there was probable cause to arrest. Therefore, there was no basis on which defense counsel could have successfully objected. Because there was no basis for a sustainable objection, defense counsel was objectively reasonable in deciding not to object.

Accordingly, we hold that defense counsel was not ineffective for failing to argue that the officers exceeded the permissible scope of the investigative stop at the motion to suppress.

We affirm the trial court's denial of the motion to suppress, and therefore we affirm Christensen's conviction.

No. 47765-3-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
MAXA, J.


We concur:


_____
JOHANSON, J.

_____
BJORGEN, C.J.