IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| NATHAN BUDKE, an individual, and all those similarly situated,<br><br>Respondent,<br><br>v.<br><br>DAN'S HERBS, LLC, d.b.a. HIGHER LEAF MARIJUANA BOUTIQUE, a Washington limited liability company; FIVE STAR TRADING COMPANY, LLC, d.b.a. HIGHER LEAF, a Washington limited liability company; and MOLLY HONIG, DANIEL DUBOIS, BEVERLY KELLEHER, DAVE MILLS, and CATHERINE SCHULTZ, each an individual, and their respective marital communities,<br><br>Appellants. | No. 82970-0-I<br><br>DIVISION ONE<br><br><br><br>UNPUBLISHED OPINION |

BOWMAN, J. — Nathan Budke gave his cell phone number to a clerk at Higher Leaf while making an in-store transaction. Budke then received several text messages from Higher Leaf promoting its brands and products. Budke sued Higher Leaf and several related defendants under Washington's commercial electronic mail act (CEMA), chapter 19.190 RCW. Defendants moved to dismiss the lawsuit under CR 12(b)(6). The trial court denied the motion and defendants appealed. The trial court then certified for discretionary review under RAP 2.3(b)(4) as a controlling question of law whether Budke "provided his consent to receive commercial text messages under CEMA by voluntarily providing his cell phone number during the course of a commercial transaction." But whether a

Citations and pin cites are based on the Westlaw online version of the cited material.

consumer consents to receive commercial messages under CEMA is a question of fact based on the totality of the circumstances. We conclude that the certified question is not reviewable as a question of law under RAP 2.3(b)(4) and remand for further proceedings.

FACTS

In July 2020, Budke visited Higher Leaf in Kirkland, a cannabis shop owned by Dan's Herbs LLC. While making a purchase, Budke gave his cell phone number to Higher Leaf "after a salesperson invited him to join the . . . rewards program." In the weeks following, Budke received at least three text messages from Higher Leaf promoting its brand and cannabis products. Higher Leaf sent each of the text messages en masse to its "former, current, and potential customers."

In February 2021, Budke filed a class-action lawsuit against Dan's Herbs d/b/a Higher Leaf; Five Star Trading Company LLC d/b/a Higher Leaf;[1] Dan's Herbs and Five Star owners Molly Honig, Daniel Dubois, and Beverly Kelleher; and Five Star owners Dave Mills and Catherine Schultz (collectively Dan's Herbs). Budke claimed that by sending "unsolicited" texts, Dan's Herbs violated CEMA.[2]

Dan's Herbs moved to dismiss Budke's complaint for failure to state a claim for which a court could grant relief under CR 12(b)(6). It argued that Budke

---

[1] This Higher Leaf store is in Bellevue.

[2] A violation of CEMA amounts to "an unfair or deceptive act in trade or commerce and an unfair method of competition" under the Consumer Protection Act, chapter 19.86 RCW. RCW 19.190.060(2).

consented to receive the texts under CEMA by voluntarily providing Higher Leaf his cell phone number. Budke opposed the motion to dismiss, arguing that voluntarily providing a cell phone number does not amount to "consent" to receive commercial "telemarketing text-spamming" messages under CEMA.

The trial court denied the motion to dismiss. It concluded that the allegations in the complaint and "hypothetical facts that might flow from those allegations" stated a claim for which the court could grant relief "with respect to the scope of the consent that was given by [Budke] and whether the subsequent communications from [Dan's Herbs] exceeded that scope."

Dan's Herbs then sought RAP 2.3(b)(4) certification for review. Budke did not oppose the motion. The trial court stayed the case and certified the question of whether Budke "provided his consent to receive commercial text messages under CEMA by voluntarily providing his cell phone number during the course of a commercial transaction." Dan's Herbs then moved this court for discretionary review of that certified question. A commissioner granted review.[3]

ANALYSIS

Under RAP 2.3(b)(4), the superior court may certify for review "a controlling question of law as to which there is a substantial ground for a

---

[3] The trial court also certified the questions of (1) whether CEMA "required Defendants to obtain the prior express written consent of Plaintiff prior to sending him commercial text messages," (2) whether "Washington courts should look to the Federal Communication[s] Commission's ('FCC') 2012 Order and regulations on the TCPA" (telephone consumer protection act, 47 U.S.C. § 227), as well as applicable Ninth Circuit case law "analyzing the same for guidance on interpreting CEMA," and (3) whether "for CEMA[,] Washington courts should adopt the courts of the [Ninth] Circuit's analysis of what constitutes consent under the TCPA prior to the 2012 FCC Order and regulations on the TCPA." But this court did not accept review of those issues as controlling questions of law.

difference of opinion." We review certified questions of law de novo. Rowe v. Klein, 2 Wn. App. 2d 326, 332, 409 P.3d 1152 (2018). We also interpret statutes de novo. West v. Dep't of Fish & Wildlife, 21 Wn. App. 2d 435, 441, 506 P.3d 722 (2022). Our goal is to give effect to the legislature's intent. Id. We first look to the plain meaning of a statute as an expression of intent. Id. When a statute fails to define a term, we may rely on the ordinary dictionary definition of the word. One Pacific Towers Homeowners' Ass'n. v. HAL Real Est. Invests., Inc., 148 Wn.2d 319, 330, 61 P.3d 1094 (2002). If the statute's language is plain and unambiguous, our inquiry ends. West, 21 Wn. App. 2d at 441.

CEMA prohibits businesses from sending commercial text messages to Washington residents:

> No person conducting business in the state may initiate or assist in the transmission of an electronic commercial text message to a telephone number assigned to a Washington resident for cellular telephone or pager service.

RCW 19.190.060(1). But a business does not violate CEMA if it transmits a text message to a person who has "clearly and affirmatively consented in advance to receive these text messages." RCW 19.190.070(1)(b).

CEMA does not define "consent." And no Washington court has considered what amounts to clear and affirmative consent under the statute. But the dictionary defines "clear" as "without obscurity or ambiguity" and "easily understood." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 419 (2002). And "affirmative" means "an expression (as the word yes or the phrase that's so) of affirmation or assent." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY at 36. "Consent" is defined as "voluntary agreement to or concurrence in some act or

purpose." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY at 482. So, a person clearly and affirmatively consents by unambiguously asserting voluntary agreement or concurrence or, in other words, by making an expression of affirmation of agreement or concurrence in a manner easily understood.

Both parties urge us to look to the Federal Communications Commission's (FCC's) interpretation of "consent" under the telephone consumer protection act (TCPA), 47 U.S.C. § 227, to decide whether voluntarily providing a cell phone number to a business during a commercial transaction amounts to clear and affirmative consent. Congress enacted the TCPA in 1991 with the rise of telemarketing. Pub. L. No. 102-243, 105 Stat. 2394; Satterfield v. Simon & Schuster, Inc., 569 F.3d 946, 954 (9th Cir. 2009). The TCPA makes automatic telephone dialing system (ATDS) telemarketing calls unlawful, but it permits calls made with "prior express consent."[4] 47 U.S.C. § 227(b)(1)(A).

In enacting the TCPA, Congress delegated to the FCC the authority to establish rules and regulations for its administration. 47 U.S.C. § 227(b)(2). In 1992, the FCC ruled that "prior express consent" under the TCPA includes "persons who knowingly release their phone numbers," concluding those persons "have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary." In re Rules & Regulats. Implementing Tel. Consumer Prot. Act of 1991, 7 FCC Rcd. 8752, 8769. Then, in 2012, the FCC created a new rule interpreting prior express consent to require "written" consent to receive commercial messages under the

---

[4] While the TCPA addresses only telephone calls, the FCC ruled that it also applies to text messages sent by ATDS. See Satterfield, 569 F.3d at 952.

TCPA. In re Rules & Regulats. Implementing Tel. Consumer Prot. Act of 1991, 27 FCC Rcd. 1830, 1838.

Dan's Herbs says we should look to the 1992 FCC rule as analogous federal authority. Budke says we should look to the 2012 rule requiring written consent. But the FCC is a federal agency, and its rules interpret terms in federal statutes to which federal courts must defer. See Satterfield, 569 F.3d at 954 (federal courts must defer to the FCC's interpretation of ambiguous terms in the TCPA). We need not defer to the FCC's interpretation of terms in an analogous federal statute.[5] See City of Arlington, Tex. v. Fed. Commc'ns Comm'n, 569 U.S. 290, 303-04, 133 S. Ct. 1863, 185 L. Ed. 2d 941 (2013); Fode v. Dep't of Ecology, 22 Wn. App. 2d 22, 33, 509 P.3d 325 (2022) (we defer to an agency's interpretation of a statute only if the agency is charged with the administration and enforcement of the statute).

We decline to adopt either FCC rule. Instead, we look to Washington law for guidance. And Washington courts have consistently held that whether a person provides express or implied consent is a question of fact to be determined from the totality of the circumstances. See, e.g., Grannum v. Berard, 70 Wn.2d 304, 307, 422 P.2d 812 (1967) (whether patient consented to a surgical

---

[5] We reject Budke's argument that failure to adopt the 2012 FCC rule renders CEMA constitutionally infirm by preemption. Budke does not show that the TCPA expressly preempts CEMA. See Mass. Ass'n of Priv. Career Schs. v. Healey, 159 F. Supp. 3d 173, 215 (D. Mass. 2016). Nor does he show that the FCC's 2012 rule impliedly preempts CEMA by conflict. Budke fails to show that compliance with CEMA would place Dan's Herbs in direct noncompliance with the TCPA because that statute applies to only ATDS calls. Neither does Budke show that CEMA hampers the objectives or purpose of the TCPA. See Satomi Owners Ass'n v. Satomi, LLC, 167 Wn.2d 781, 800, 225 P.3d 213 (2009); Pub. L. No. 102-243, 105 Stat. 2394; SUBSTITUTE H.B. 2007, 58th Leg., Reg. Sess. (Wash. 2003).

operation is a question of fact to be determined from the circumstances of each individual case); Alston v. Blythe, 88 Wn. App. 26, 33-34, 943 P.2d 692 (1997) (consent in an implied assumption of risk analysis is an issue of fact); Cranwell v. Mesec, 77 Wn. App. 90, 101, 890 P.2d 491 (1995) (whether tenants voluntarily consented to inspections is a question of fact to be determined from the totality of the circumstances); State v. Russell, 180 Wn.2d 860, 871, 330 P.3d 151 (2014) (whether a person consented to a search is a question of fact dependent on the totality of the circumstances). We do not decide questions of fact under RAP 2.3(b)(4).

We conclude that whether Budke consented to receive commercial text messages under CEMA by voluntarily providing his cell phone number during a commercial transaction is a question of fact not reviewable as a controlling question of law under RAP 2.3(b)(4). We remand for further proceedings.

_____, J.

WE CONCUR:

_____, J.          _____, J.

7